# LEWIS, Appellant, v. ANNIE CREEK MINING CO. et al., Respondents

(48 N. W.2d 815)

(File No. 9117.  Opinion filed July 10, 1951)

Rehearing denied September 18, 1951

Clarence P. Cooper, Lead, for Plaintiff and Appellant.

Hanley, Leedom and Driscoll, Rapid City, for Answering Defendants and Respondents.

BAKEWELL, Circuit Judge. Appellant seeks foreclosure of a miner's lien on the mining property of the defendant, Annie Creek Mining Company, in Lawrence County. The only answering defendants, Hayes, Crary and Munger, judgment creditors of the mining company, resisted the granting of such relief, and the trial court held the lien invalid and denied foreclosure. Appellant assigns as error all fact findings, conclusions of law, and the judgment which dismisses his complaint.

The facts so far as relevant are as follows:

About July 1, 1928, appellant was employed by the Annie Creek Mining Company, a corporation, as caretaker and repairman on the Annie Creek Mine, and continued in that employment until March 17, 1942. During all the time covered by his claim for unpaid wages, his compensation was fixed by agreement between himself and the owners at $50 per month. During the last 35 months and 17 days, these wages were not paid to him, and on March 20, 1942, he filed a miner's lien covering an indebtedness of the owners to him of $1759.64. The Annie Creek Mine had been improved, developed and operated as a mine prior to the commencement of appellant's service, but during his employment no ore was removed from the mine nor was the mill operated. It was an idle though not abandoned mine.

As a part of the development of the mining property, buildings or top structures had been erected. These consisted of a mill building housing the mining machinery, in size about 60' x 40', a dwelling house, and an office building. Additional to this there was a small structure housing an electrically-operated pump, the function of which was to elevate water into a reservoir formed by a sand dam across the canyon. The evident purpose of impounding this water above the dam was to furnish fire protection for the buildings on the property.

In his employment as caretaker and repairman, the appellant had the duty of keeping this electric pump in opera-

tion, and keeping in repair the sand dam from which the sand washed down as a result of heavy rains. He also kept the snow shoveled from the roof of the mill, to prevent its crushing and collapse. This roof was made of lumber covered by sheets of flat, uncorrugated tin, about 3' x 6' in size. Due to the decayed condition of the roof lumber, these metal sheets were so insecurely attached as to cause them to frequently loosen in the wind, and from time to time appellant was required to and did replace and renail these metal sheets to the roof. Additional to these labors, he on one occasion took down the building which housed the electric motor and pump, sawed out the timbers from the sump, replaced them with new ones, rebuilt the building, and, after so doing, installed a new pump. Appellant and his family lived in the dwelling house on the property, kept a watch out for fires in the timber, and protected the property, including the mining and milling machinery, from the trespass and depredations which could be expected to result were the property unoccupied and unwatched.

From these facts the trial court found that although the plaintiff was employed by the Annie Creek Mining Company, such employment was only as a watchman or caretaker of an idle and inactive mining property, and that he performed no "manual labor or service" thereon except such as was merely incidental to his duties as a watchman, and that "none of such labor or service" contributed to the improvement, development or operation of the said property, and concluded as a matter of law that appellant was not entitled to a lien on the property under either the 1919 or 1939 statues. The substance of the court's decision is that although appellant performed labor on the property, he is not entitled to a miner's lien because such labor was not furnished for the improvement, development, or operation thereof.

Liens of persons furnishing labor or other service, or materials upon or for mines and mining property, generically termed miner's liens, like those of laborers, mechanics and material men generally, are defined and regulated by statute. As to appellant's service prior to July 1, 1939, his status as a lienor is controlled by Sec. 1631, Revised Code

of 1919, while for the remainder of his employment SDC 39.-0701 is the applicable statute.

The first miner's lien statute is Ch. 41, Laws of 1879. This, without change, was reenacted as Sec. 2039 of the Territorial Compiled Laws of 1887. The latter was amended by Ch. 134, Laws of 1895. In the 1903 Code, these earlier statutes were superseded by Sec. 2573, Revised Political Code thereof, but this section was itself specifically amended in the same year by Ch. 182, Laws of 1903, which in turn was superseded by Ch. 51, Laws of 1909.

In Cessna v. Otho Development and Power Company, 35 S. D. 557, 153 N.W. 380, it was held that the 1909 statute was inferentially repealed by Ch. 263, Laws of 1913. The 1909 statute was reenacted as Ch. 243, Laws of 1915. This latter statute was the immediate antecedent of Sec. 1631, Revised Code of 1919.

Before considering Sec. 1631, and for the purpose of determining its meaning, let us briefly review its statutory lineage. Sec. 1, of the 1879 statute, so far as work or labor is concerned, declared a lien to one who shall "perform any labor whatever on said mine," or who shall "perform any labor on any tunnel". The reenactment of this section into Sec. 2039, Political Code of 1887, is identical except that it says "in" instead of "on" any tunnel.

The 1895 amendment enlarges the scope of the lien by making it read "perform any labor in any tunnel, or other mining works", and Sec. 2573, Revised Political Code of 1903, makes no change in this language, but follows the earlier acts in providing a lien both for "any labor whatever on said mine" and for "any labor in any tunnel". Ch. 182, 1903 Session Laws, substitutes for the phrase "any labor in any tunnel," the words "any labor in any of said works upon said property".

Why these statutes distinguished between labor on a mine and labor in a tunnel or "in any tunnel, or other mining works" is not important, for, as the statute was after the 1903 amendment, one performing any labor either on a mine or in any mining works was entitled to a lien on the mine or any of its appurtenances or connected with its workings.

Ch. 51, Laws of 1909, and its reenactment as Ch. 243, Laws of 1915, represents a distinct change in phraseology from the earlier statutes, in that it provides a lien to one who shall "perform any labor of any kind whatever" upon any mine, or "aid in the operation and development thereof". The broad comprehensiveness of the word "aid" covers labor of every kind which could be done in the development or operation of a mine, including, of course, its improvement by the erection of buildings or other structures, so there was no necessity for the preceding phrase "perform any labor of any kind whatever" except to authorize a lien for labor other than such as aided in the development or operation of the mine.

This brings us to Sec. 1631, Revised Code of 1919, which provides: "Every miner or [any] other person who * * * shall perform any labor of any kind whatever upon said mine, or mining claim, or aid in the operation and development thereof, or shall furnish any materials of any kind whatsoever for the development or operation of such mine or mining claim, * * * or shall furnish any gas, electricity or compressed air or other force or power of any kind for the lighting, operation or development of any such mine or mining claim, shall have a first lien * * upon such mine or mining claim * * *."

Breaking down this statute into its separate, distinct, and several parts, it should be read as vesting a lien on a mine to every miner or other person who either:

(1) Performs labor of any kind whatever upon said mine;

(2) Aids in the operation and development thereof;

(3) Furnishes any materials of any kind whatsoever for the development or operation of such mine;

(4) Furnishes any gas, electricity, compressed air or other force or power of any kind for the lighting of any such mine; or

(5) Furnishes any such force or power for the operation or development of any such mine.

Each of these items deals separately with a particular contribution to the mine, and each item is disjoined from any other by the word "or." Insofar as concerns one

performing labor on a mine, the statute could not be differently construed had it read, "every miner or other person who shall perform any labor of any kind whatever upon said mine shall have a lien thereon." It is wholly unaffected by its inclusion with liens granted for other contributions.

Of these five items, only (2), (3) and (5) are, by the terms of the statute, required to be for the "development" or "operation" of the mine. Labor, as mentioned in (1), may or may not be connected with development or operation, and the furnishing of power, such as electricity, vests a lien if the power is used for the lighting of a mine, without regard to whether it is in connection with either the development or operation of the mine. The "aid" referred to in (2) must, of course, be for either the operation or development of the mine, and the word is broad enough in meaning to include, in addition to labor, personal services of a nature not constituting labor, such as those of a superintendent or foreman, who, under the statute as it was prior to 1909, were not entitled to a lien on the mine. Hahn v. Anaconda Gold Mining Co., 26 S. D. 218, 128 N.W. 128.

■ Appellant's service as a watchman, caretaker, and repairman was a valuable and important service, done and performed at the owner's instance. It was labor performed upon a mine and is within the purview of Sec. 1631. Appellant is vested with a lien on the mining property for the amount due him on July 1, 1939.

We pass to a consideration of his right to a lien for labor performed after July 1, 1939, the effective date of the 1939 Code Revision.

SDC 39.0701 is the section of the 1939 Code which defines miners' liens. Here the Code Commission has combined and brought together in one chapter the law on miners' liens which was Ch. 15, Art. 11 of Title 1 of the Revised Code of 1919, and Art. 12 of the same title which related to laborers' and mechanics' liens generally. The statute reads: "Whoever shall, at the request of the owner or the duly authorized agent or representative of the owner, or of any contractor or subcontractor, furnish skill, labor, services, including light, power, or water, equipment, or materials for

the improvement, development, or operation of property as hereinafter specified, shall have a first lien thereon and the appurtenances thereto, prior and superior to all other liens except those of the state or of the United States, and except existing liens, mortgages, or other incumbrances then of record or of which the lien claimant has actual notice, for the price or value of the same, so furnished, subject to the further provisions of this chapter, as follows:"

This part of the statute is followed by subdivisions 1 and 2, which in application are limited to liens other than on mines. Then follows subdivision 3, which relates to liens on mines, springs, and oil and gas wells. This provides: "(3) Upon any mine or mining claim, oil or gas well or spring, a lien upon the same and any rights, privileges, franchises, easements, and tangible property and other property or appliances appurtenant thereto, for any of the items hereinbefore specified or referred to as giving right to a lien."

If appellant is vested with a lien on this property it is because he has furnished labor thereon. Whether this item of labor is required to be "for the improvement, development, or operation of property" depends on whether that phrase as it appears in the statute qualifies the words "skill," "labor," "services," "equipment," and "materials," or only the word "materials," which without an intervening comma, immediately precedes the qualifying phrase.

■■ It is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation. Hopkins v. Hopkins, 287 Mass. 542, 192 N.E. 145, 95 A.L.R. 1286. And the presence of a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one. 50 Am.Jur. 259.

But it is probably no more than an indication of legislative intent and because of statutory declaration in this state may not be considered in construing the statute with which we are here concerned. The statute SDC 65.0202 provides:

"(6) Punctuation. Punctuation shall not control or affect the construction of any provision when any construction based on such punctuation would not conform to the spirit and purpose of such provision;"

■■ "Punctuation" as here used includes not only the use but also the absence or lack of punctuation, so SDC 39.0701 must be construed without regard to either the presence or absence of a comma following the word "materials." And so, standing alone and without reference to any other statute, it is capable of being understood in either of two senses and is therefore ambiguous. It may be read as requiring labor furnished upon a mine to be for its improvement, development, or operation, or equally and as well be construed as vesting a lien for any labor performed on a mine without regard to whether such labor is for either the improvement, development, or operation thereof.

But we are not without a guide to the interpretation of this statute. As was said in Reaney v. Union County, 69 S. D. 392, 10 N.W.2d 762, 763: " 'A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable.' "

■ In case of doubt and uncertainty as to the meaning of a provision of a compiled or revised statute, its true meaning may properly be ascertained by resort to the act from which the provision was derived, and particularly is this rule applicable where it is not subject to a fair construction without consultation of the original statute. The presumption that obtains in the case of an amendment of a statute that a departure from the law formerly existing is intended, has little, if any, force in the case of a general revision or codification of the laws of a state. In fact, it is a settled rule of construction that where the entire legislation affecting a particular subject matter has undergone revision and consolidation by codification, the sections of the revision will be presumed to have the same meaning as the original sections, and this notwithstanding there is an alteration in phraseology or an omission or addition of words, for in such

case the new language may properly be attributed to a desire to condense and simplify the law, or to improve the phraseology. 50 Am.Jur. 464 (§§ 446, 447). This, we think, is a fair statement, of the rule as generally applied.

In McDonald v. Hovey, 110 U. S. 619, 4 S.Ct. 142, 28 L.Ed. 269, it was said that where inadvertent changes have been made by incorporating different statutes together, their original construction is not changed. Revised or consolidated statutes will be construed as bearing the same meaning as the original statutes or sections unless the language of the revision or consolidation plainly requires a change of construction to conform to the manifest intent of the legislature.

Lindsay v. United States Savings & Loan Co., 127 Ala. 366, 28 So. 717, 51 L.R.A. 393; Mitchell v. Georgia and Alabama Ry. Co., 111 Ga. 760, 36 S.E. 971, 51 L.R.A. 622; Miller Lumber Co. v. Federal Home Development Co., 231 Wis. 509, 286 N.W. 58, 122 A.L.R. 752; Miller v. State ex rel. Peek, 249 Ala. 14, 29 So.2d 411, 172 A.L.R. 1356.

The intent, purpose and effect of the revision is expressed by the Code Commission in Vol. 1 of the Code at page 12, where it is said: "There have been very few actual changes in the meaning of any laws. Numerous changes in phraseology were made merely for the purpose of more clearly and concisely expressing the legislative intent; hence, except where a contrary intention plainly appears, it should not be inferred from any such change that a change in the meaning of the statute was intended. The revision has consisted principally of removing ambiguous words and replacing them with plainer words with the meaning of the statute left the same; removing redundant words, phrases, and clauses; uniting statutes relating to identical or closely related subject matter; dividing one statute into two or more where it contained such divergent subject matter that confusion in the entitling or indexing of it might result; * * *."

SDC 39.07 unites two statutes dealing with closely related subject matter previously expressed in separate statutes, a function which the revisers refer to as one of the principal purposes of the revision. The mechanics of this union necessitated a new and different phraseology which

we are admonished to construe in accordance with the foregoing explanation. Unless it plainly appears that such changed phraseology was intended to change the meaning of Sec. 1631, Revised Code of 1919, it should not be inferred that SDC 39.0701 has that effect. The ambiguity inherent in the latter statute forbids such inference. No right is more firmly embedded in the statutes of this state than that expressed in Sec. 1631 of the 1919 Code. To construe the recodification as limiting a miner's lien to items for the improvement, development, or operation of a mine would be to abandon a legislative policy which for sixty years had vested in "every miner or other person who shall perform any labor whatever on said mine" a lien thereon, Ch. 41, Laws of 1879, and had for thirty years authorized a lien to one furnishing gas or electricity for its lighting, Ch. 51, Laws of 1909, all without regard to whether such labor or lighting was for the improvement of such mine or its development or operation. Such is neither the effect nor do we think the intent of either the Code Commission or the legislature.

The judgment is reversed and the cause remanded for entry of judgment as prayed in the complaint.

All the Judges concur.

BAKEWELL, Circuit Judge, sitting for HAYES, J., who was disqualified.

Opinion modified on September 18, 1951, to omit the direction of the entry of judgment.