1999 SD 153

**NEW ERA MINING COMPANY,**
Plaintiff and Appellee,

v.

**DAKOTA PLACERS, INC., a South Dakota corporation; Red Ex Associates, a joint venture; Lawrence County, a political subdivision; First Interstate Bank of Commerce, and K.A. Ray Smith and William Speer, Defendants,**

and

**Ken Dehn & Son Oil Co. and Sundstrom, Inc., Defendants and Appellants.**

No. 20833.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Dec. 15, 1999.

Jon W. Mattson, Deadwood, South Dakota, Attorney for plaintiff and appellee.

Stan H. Anker, Rapid City, South Dakota, Attorney for defendant and appellant Ken Dehn & Son Oil Co.

A.P. Fuller of Fuller, Tellinghuisen, Gordon & Percy, P.C., Lead, South Dakota, Attorneys for defendant and appellant Sundstrom.

GILBERTSON, Justice.

[¶ 1.] Defendants Ken Dehn & Son Oil Co., Inc. (Dehn) and Sundstrom Inc. (Sundstrom) appeal from the circuit court's judgment foreclosing their mechanics' liens in whole or in part from the title to real estate held by Brightwater, Inc., successor of New Era Mining Company (New Era). We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On May 25, 1989, Dakota Placer, Inc.[1] entered into a Contract for Deed to purchase a portion of the Red Placer Mining Claim, located in Lawrence County, South Dakota, from New Era for a total sum of $1,000,000.00. The Contract for Deed was recorded in the office of the Lawrence County Register of Deeds on June 28, 1989. On May 1, 1990, New Era and Dakota Placer entered into an amendment to the Contract for Deed to modify payment dates and include as an assignee, Red Ex Associates. No payments were ever made by Dakota Placer or from its assignee Red Ex, to New Era on the contract or its amendment.

[¶ 3.] On December 16, 1994, the court entered judgment in favor of New Era, foreclosing all of the right, title and interest of Dakota Placer and Red Ex in the property subject to the right of redemption. The balance owing as of December 16, 1994 exceeded the original contract obligation of Dakota Placer. Redemption did not occur.

[¶ 4.] Defendant Dehn filed a mechanic's lien on October 18, 1991, in the amount of $12,484.26 for petroleum products and materials furnished in furtherance of the exploration, development and operation of the mine and property which was the subject of the Contract for Deed. Included in Dehn's mechanic's lien was $1,060.00 for two gas tanks which were personal property and which were removed from the property by Dakota Placer, $6,261.92 for fuel provided to Dakota Placer and $5,163.34 for fuel provided to Sundstrom, which was used to operate machinery and pumps in the process of extraction of the gold from ore during the mining operations. Some temporary structures and equipment were placed on the property in connection with the mining operation. However, no permanent buildings, structures or improvements were placed on the property and all temporary structures and equipment were removed from the property either by Dakota Placer or Red Ex.

[¶ 5.] Sundstrom also timely filed its mechanic's lien on October 25, 1991 in the amount of $158,077.68 for work and labor provided between September 25, 1990 and October 14, 1991. Because its claim was

---

**1.** Dakota Placer and its subsequent assignee, Red Ex were defendants at the circuit court trial but are not involved in this appeal.

not totally denied by the trial court, the nature of its contributions will be developed later.

[¶ 6.] In February of 1995, Brightwater, Inc. purchased the mining property from New Era pursuant to a purchase agreement dated July, 1994. This purchase price was less than the purchase price under the New Era contract of 1989 and was less than the balance owed to New Era by Dakota Placer in December of 1994 when the court entered judgment of foreclosure against Dakota Placer and Red Ex. A trial was held on August 20 and 21, 1998 to determine priority of mechanics' liens of defendants Dehn, Sundstrom, and other lien claimants. Dehn and Sundstrom claimed the mechanics' liens on petroleum and machinery they supplied for the operation of the mine should have priority, because the goods and services constituted improvements. Pursuant to SDCL 44–9–1 New Era claimed a vendor's lien prior and superior to, Dehn's and Sundstrom's liens and the other lien claimants. On October 28, 1998, the trial court entered judgment in favor of Brightwater, New Era's successor, holding title to the property be free and clear in part of the mechanic's lien of Sundstrom and of the mechanics' liens of Dehn and the other lien defendants. Defendants Dehn and Sundtrom appeal, raising the following issue for our consideration:

Whether the trial court erred when it held the word "improvement" in SDCL 44–9–3 includes development of the mine but does not include materials and services supplied for the operation of the mine.

## STANDARD OF REVIEW

[¶ 7.] "Statutes are interpreted 'under a de novo standard of review without deference to the decision of the trial court.'" *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (quoting *In re Estate of Jetter*, 1997 SD 125, ¶ 10, 570 N.W.2d 26, 28.) We review the trial court's findings of fact under the clearly erroneous standard.

*Id.* (citing *In re Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139.) "Clear error is shown only when, after review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Cleveland v. Tinaglia*, 1998 SD 91, ¶ 16, 582 N.W.2d 720, 724.) Conclusions of law are reviewed de novo. *Id.*

## ANALYSIS AND DECISION

[¶ 8.] This Court has not had the opportunity to interpret the meaning of the word "improvement" in SDCL 44–9–3. This Court has established the well-settled rule of statutory construction that "[w]ords and phrases in [a] statute must be given their plain meaning and effect." *Id.* (quoting *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539). When a statute's language is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. *Id.* We have also previously stated:

The intent of a statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said; and the court must confine itself to the language of the statute. It is not the task of this court to revise or amend statutes, or to 'liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction.'

*Estate of Jetter*, 570 N.W.2d 26, 1997 SD 125, ¶ 17 n. 6 (quoting *Sudbeck v. Dale Electronics, Inc.*, 519 N.W.2d 63, 67 (S.D. 1994) (internal citations omitted)).

[¶ 9.] Dehn and Sundstrom argue the trial court erred as a matter of law when it held that the word "improvement" in SDCL 44–9–3 encompasses development, but not operation of a mine. SDCL 44–9–3 provides:

Whenever land is sold under an executory contract authorizing the vendee to

improve the same, and such contract is forfeited or surrendered after liens have attached by reason of such improvements, the title of the vendor shall be subject thereto, but he shall not be personally liable if the contract was made in good faith.

The trial court determined in order for the lien claimant to prevail under SDCL 44–9–3, the lien must have constituted an improvement to the property, defined as some kind of benefit, which did not include the operation of a mine. The trial court found except for the improvements with a total value of $11,501.80 provided by Sundstrom, the mining property was not enhanced in any way by reason of the work, services and materials provided by Dehn and Sundstrom. The court found a $11,-501.80 portion of the work and services by defendant Sundstrom to be improvements rather than operation costs. These costs included reclamation and bank stabilizational work valued at $6,440, removal of overburden and to open ore bodies valued at $2,536.80, and construction of a containment pond and roads valued at $2,525, for a total improvement value of $11,501.80.[2] Besides these few improvements, the trial court found the overall value of the property was actually decreased, and the reclamation obligation sustained by New Era and Brightwater substantially increased due to the work of Dakota Placer and Red Ex in part due to the materials and other items furnished by Dehn and Sundstrom. We find no error.

[¶ 10.] This Court looks to the history of the miner's and mechanic's lien statutes to determine legislative intent. In 1939, the South Dakota Legislature combined and brought together in one chapter the law on miners' liens and the law related to laborer's and mechanics' liens generally. *Lewis v. Annie Creek Mining Co.,* 74 S.D. 26, 48 N.W.2d 815, 818 (1951). Prior to 1939, the miners' lien statutes were separate and

distinct from the mechanic's lien statutes. In *Lewis,* 48 N.W.2d at 819–820, this Court stated:

> Revised or consolidated statutes will be construed as bearing the same meaning as the original statutes or sections unless the language of the revision or consolidation plainly requires a change of construction to conform to the manifest intent of the legislature ... hence, except where a contrary intention plainly appears, it should not be inferred from any such change that a change in the meaning of the statute was intended.

*See also City of Redfield v. Wharton,* 79 S.D. 557, 115 N.W.2d 329 (S.D.1962); *Thorson v. Maxwell Hardware Company,* 82 S.D. 385, 146 N.W.2d 739 (1966). Following the rationale of *Lewis,* this Court is bound to give the term "improvements" the same meaning it had prior to the 1939 consolidation or revision. SDCL 44–9–3 was Section 39.0706 under the 1939 Code, and Section 1647, Article 12 under the Revised Code of 1919. Both of these Sections related specifically to mechanics' liens. Section 1643 of the Revised Code of 1919 defined improvement to be the "erection, alteration, repair and removal of any building, fixture, bridge, fence or other structure thereon, or for grading, filling-in, or excavating the same ..." It is clear the word "improvements" continues to carry the same meaning in SDCL 44–9–3 as in the Revised Code of 1939.

[¶ 11.] Under Section 1631, Article 11 of the Revised Code of 1919, a miner had a lien for labor performed upon a mine *or in the operation and development of a mine or for furnishing materials for the development and operation of a mine.* However, under Section 1643, Article 12 of the Revised Code, a mechanic's lien for other than miners was limited to the *improvement* of real estate by performing labor, or furnishing skill, material or machinery for the erection, alteration, repair or removal

2. New Era and Brightwater did not file a notice of review challenging this award by the trial court to Sundstrom.

of any building, fixture, bridge, fence or other structure thereon or for grading, filling-in or excavating. SDCL 44–9–3 only contains the word "improvements" as used previously in connection with mechanics' liens and not the words "operation and development" as used with miners' liens. If the legislature wanted SDCL 44–9–3 to state "improvements *and operations,*" it would have done so.

[¶ 12.] Dehn claims because it supplied petroleum products and other items in furtherance of the exploration, development and operation of the mine, the trial court clearly erred when it adopted the position that aiding in the operation of a mine does not constitute the kind of benefit that an "improvement" does. We disagree. None of the work performed, or the services provided by Dehn fits within the ambit of SDCL 44–9–3.

[¶ 13.] The work and services performed by Sundstrom consisted primarily of services performed in connection with the actual mining operation of high-grade gold from the property. Sundstrom did not build or construct any buildings, structures, or similar improvements on the property, but rather furnished heavy equipment to do the actual mining of minerals. Moreover, this equipment was removed from the property by either Dakota Placer or Red Ex. There is a principle that to entitle an occupant of property an allowance for improvements, the improvements must not only be beneficial to the owner, but also permanent. 41 AmJur2d *Improvements* § 21. "The phrase 'permanent improvements' means something done to or put on the land or, in other words, something the occupant cannot remove or carry away with him, ... because it has become physically impossible to separate it from the land ..." *Id.* The trial court followed this principle when it determined Sundstrom's reclamation and bank stabili-

zational work, removal of overburden and opening of ore bodies, and construction of containment ponds and roads did constitute "improvement" of the property.

[¶ 14.] Dehn and Sunstrom cite *Caird Engineering Works v. Seven–Up Gold Mining Co.,* 111 Mont. 471, 111 P.2d 267 (1940) as authority for their position. In *Seven–Up,* which also involved an unsuccessful mining operation, the mechanics' lien claimants had constructed numerous structures on the premises, included a three-room house and a mill. The court held the lien claimants were entitled to a lien on all improvements and structures operated as a unit in the mining enterprise. *Id.* at 280.

[¶ 15.] In this case, Dehn did not erect any buildings, structures, or improvements on the premises, but rather furnished heavy equipment, including loaders and dozers, etc., for performing the actual mining. These mining operations did not in any way benefit, or enhance the property,[3] but rather depleted the natural resources and increased the reclamation obligation to the detriment of New Era and Brightwater. The failure of the mining operation decreased the value of the property, as evidenced in part by the fact the property sold for less after the mining of Dakota Placer. This evidence counters Dehn's claim of "improvement" to the property.

[¶ 16.] Pursuant to SDCL 44–9–3, Dehn and Sundstrom also argue if a contract authorizes improvements to be made by the vendee, then the vendor's title will be subject to a mechanic's lien of another. They claim it is clear from the Contract for Deed and Amendment that New Era authorized the development of the mine. Also, they argue New Era consented to the development of the mine by retaining a two percent profit interest in the mine and all payments were to come from opera-

---

3. The word "improvement" includes everything that permanently enhances the value of premises for general uses. 41 AmJur2d *Improvements* § 1. Only improvements which have added to the value and worth of the property, not the expense or cost of such improvements, are compensable. 41 AmJur2d *Improvements* § 20.

tions. This Court recognizes the principle of "[w]hen the vendor sustains such a relation to the contract of the vendee by consenting to it or requiring the improvement to be made, or otherwise subjecting his interest to the lien, the mechanics' lien may prevail over that of the vendor." 53 AmJur2d *Mechanics' Liens* § 268. However, all of Dehn's and Sundstrom's arguments assume there were actually "improvements" made to the property. Other than the undisputed $11,501.80 provided by Sundstrom, there is no evidence Dehn or Sundstrom provided any services which permanently enhanced the value of the property. To the contrary, as previously noted, the trial court concluded Dehn and Sundstrom caused the value of the property to actually decrease and correctly found no improvements.

[¶ 17.] Dehn and Sundstrom argue New Era did not advise the defendants or post any notice that improvements were not being made at the insistence of or with the consent or authorization of New Era pursuant to SDCL 44-9-4. SDCL 44-9-4 provides:

> Any person who has not authorized *the improvement* may protect his interests from such liens by serving upon the persons doing the work or otherwise contributing to *such improvement,* within five days after knowledge thereof, written notice that *the improvement* is not being made at his instance, or by posting like notice, and keeping the same posted, in a conspicuous place on the premises. (emphasis added).

However, New Era argues in response it was a bonafide prior encumbrancer or lienholder and was not required to post any such notice under SDCL 44-9-2. We agree. SDCL 44-9-2 provides:

> When improvements are made by one person upon the land of another, all persons interested therein *otherwise than as bona fide prior encumbrancers or lienors* shall be deemed to have authorized *such improvements,* insofar as to subject their interests to the liens

therefor; provided that as against a lessor no lien is given for repairs made by or at the instance of his lessee. (emphasis added).

Moreover, this Court held in *Stoneberger v. Davis,* 74 S.D. 300, 305, 51 N.W.2d 873, 876 (1952): "[W]here persons interested in land, (*other than bona fide prior encumbrances or lienors*), with knowledge of the improvement fail to give the prescribed notice, the improvement shall be deemed to have been authorized by them, so far as to subject their interests to liens."

[¶ 18.] New Era argues it was a bona fide prior lienor because the subject property in this action was still titled to New Era, while Dakota Placers held equitable title. We agree with New Era. In *Wagner v. Wagner,* 47 S.D. 104, 196 N.W. 499 (1923), this Court held the plaintiff's vendor's lien was superior to defendant's mechanic's lien because the vendor was a bona fide prior lienor. "Upon the execution of the contract, defendant Wagner became the equitable owner, and, while respondent still held the legal title, she held it in trust for the purchaser and as security for the payment of the balance remaining unpaid on the contract." *Id.* (citing *Reid v. Gorman,* 37 S.D. 314, 158 N.W. 780 (1916); *Phillis v. Gross,* 32 S.D. 438, 143 N.W. 373 (1913); *State v. Weide,* 29 S.D. 109, 135 N.W. 696 (1912)). Therefore, New Era was not required to provide any notice to Dehn, Sundstrom, or the other defendants under SDCL 44-9-2, as it had superior title to the realty.

[¶ 19.] We affirm.

[¶ 20.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.