#26792-a-JKK

**2014 S.D. 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SAVE OUR NEIGHBORHOOD —
SIOUX FALLS; BONITA SCHWAN;
DAN WRAY; GALE WRAY; RICHARD
V. WILKA; MITCHELL ARENDS;
ERIN ARENDS; REBEKKA KLEMME;
NEIL KLEMME; DANA VAN BEEK
PALMER; ANNE RASMUSSEN;
and DUANE O'CONNELL,                          Petitioners and Appellants,

     v.

CITY OF SIOUX FALLS; and
the SIOUX FALLS CITY COUNCIL,                 Respondents and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE STUART L. TIEDE
Judge

* * * *

RONALD A. PARSONS, JR.
PAMELA R. BOLLWEG of
Johnson, Heidepriem & Abdallah, LLP
Sioux Falls, South Dakota                     Attorneys for petitioners
                                      and appellants.

JAMES E. MOORE
BLAYNE N. HAGEN of
Woods, Fuller, Shultz & Smith, PC
Sioux Falls, South Dakota                     Attorneys for respondents
                                      and appellees.

* * * *

ARGUED ON APRIL 29, 2014
OPINION FILED **06/18/14**

#26792

KONENKAMP, Justice

[¶1.]    Landowner members of "Save Our Neighborhood" seek to invalidate an annexation resolution adopted by the City of Sioux Falls under SDCL 9-4-1, annexing property to be developed for a Walmart store.  Located in Lincoln County, the land is unplatted and zoned for agricultural use.  Its owner voluntarily petitioned for its annexation to Sioux Falls.  Save Our Neighborhood contends that the City failed to obtain approval from the Lincoln County Board of County Commissioners under SDCL 9-4-5.  The circuit court denied writs of certiorari and prohibition, ruling that SDCL 9-4-5 did not apply to a resolution adopted under SDCL 9-4-1.

## Background

[¶2.]    On January 22, 2013, Springdale Development, LLC petitioned the City of Sioux Falls to annex its property under SDCL 9-4-1.  Unplatted and zoned for agricultural use in Lincoln County, Springdale's 39 acres lie contiguous to the City.  As part of its standard practice, the City notified Lincoln County of Springdale's request and asked for comment.  Lincoln County submitted no comment.  In April 2013, the City adopted Resolution No. 25-13 to annex Springdale's real property.  The City filed the approved resolution with the Lincoln County Register of Deeds, but did not seek approval from the Lincoln County Board of County Commissioners.

[¶3.]    In July 2013, eleven landowners, neighbors to Springdale's property, joined as "Save Our Neighborhood" and petitioned the circuit court for writs of prohibition and certiorari.  They sought to invalidate the City's annexation

-1-

resolution and to prohibit the City from rezoning the property to allow a Walmart store. Save Our Neighborhood asserted that SDCL 9-4-5 required the City to obtain approval from the Lincoln County Board of County Commissioners before legally adopting a resolution to annex Springdale's unplatted agricultural land.

[¶4.] At the hearing before the circuit court, Chief Planning and Zoning Official Jeff Schmitt and City Attorney Dave Pfeifle testified. The parties also submitted a statement of stipulated facts. At the conclusion of the hearing, the court denied Save Our Neighborhood's petitions. It ruled that SDCL 9-4-5 was ambiguous and thus relied on legislative history to conclude that the Legislature intended SDCL 9-4-5 to apply only to a city-initiated annexation under SDCL 9-4-4.2.

[¶5.] Save Our Neighborhood appeals asserting that the circuit court erred in its interpretation of SDCL 9-4-5 and in its denial of the petitions for writs of prohibition and certiorari. "Our review of certiorari proceedings is limited to whether the challenged court, officer, board, or tribunal had jurisdiction and whether it regularly pursued its authority." *Esling v. Krambeck*, 2003 S.D. 59, ¶ 6, 663 N.W.2d 671, 675 (citation omitted). We review the circuit court's interpretation of a statute de novo. *Id.* (citing *Ridley v. Lawrence Cnty. Comm'n*, 2000 S.D. 143, ¶ 5, 619 N.W.2d 254, 257).

**Analysis and Decision**

[¶6.] Save Our Neighborhood argues that SDCL 9-4-5 applies to all resolutions for annexation, and therefore, the City exceeded its jurisdiction and acted in irregular pursuit of its authority when it passed Resolution No. 25-13 to

annex Springdale's Lincoln County property without first obtaining approval from the Lincoln County Board of County Commissioners. SDCL 9-4-5 provides, in part, that "[n]o such resolution describing unplatted territory therein may be adopted until it has been approved by the board of county commissioners of the county wherein such unplatted territory is situate." Springdale's property was unplatted at the time Springdale petitioned for annexation, and it is undisputed that the City did not obtain approval from the Lincoln County Board of County Commissioners before adopting Resolution No. 25-13. Quoting this Court's oft-repeated maxim that "[t]he intent of a statute is determined from what the Legislature said, rather than what we think it should have said," Save Our Neighborhood contends that because the plain language of SDCL 9-4-5 does not distinguish between landowner-initiated or city-initiated actions for annexation, the City was required to comply with SDCL 9-4-5.

[¶7.] The City, on the other hand, asserts that the word "such" in SDCL 9-4-5 makes the statute ambiguous. It is ambiguous, the City argues, because "such" is a demonstrative adjective that must refer to an antecedent, but there is no antecedent within SDCL 9-4-5. Directing us to the legislative history related to SDCL chapter 9-4, the City maintains that the Legislature intended SDCL 9-4-5 to apply only to a city-initiated action for annexation under SDCL 9-4-4.2.

[¶8.] Our interpretation of a statute is confined to the language used by the Legislature. *See In re Estate of Gossman*, 1996 S.D. 124, ¶ 10, 555 N.W.2d 102, 106 (citations omitted). "Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain, and

unambiguous, there is no reason for construction, and [this] Court's only function is to declare the meaning of the statute as clearly expressed." *Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162 (alteration in original) (citation omitted). Accordingly, "[a] court is not at liberty to read into the statute provisions which the Legislature did not incorporate, or enlarge the scope of the statute by an unwarranted interpretation of its language." *In re Adams*, 329 N.W.2d 882, 884 (S.D. 1983) (citation omitted).

[¶9.] Because legislative "[i]ntent must be determined from the statute as a whole, as well as enactments relating to the same subject," we begin by looking at the structure of chapter 9-4. *See Wiersma v. Maple Leaf Farms*, 1996 S.D. 16, ¶ 4, 543 N.W.2d 787, 789 (citations omitted). Under SDCL 9-4-1, a landowner may voluntarily request, by petition, that the governing body of a municipality adopt a resolution to annex property contiguous to that municipality. The petition must be "signed by not less than three-fourths of the registered voters and by the owners of not less than three-fourths of the value of the territory sought to be annexed to the municipality." *Id.*

[¶10.] Another means to annex property is provided in SDCL 9-4-4.1: "Except as provided by § 9-4-1, before a municipality may extend its boundaries to include contiguous territory, the governing body shall conduct a study to determine the need for the contiguous territory and to identify the resources necessary to extend the municipal boundaries." Based on the results of the study, SDCL 9-4-4.2 gives a governing body authority to "adopt a resolution of intent to extend its boundaries." This action is commonly referred to as a "city-initiated" or "involuntary" annexation.

The statute dictates what information the resolution of intent must contain, and SDCL 9-4-4.3 requires that before the adoption of the resolution of intent, the governing body must give notice and hold a hearing in compliance. After a resolution of intent is adopted, SDCL 9-4-4.4 requires the governing body to hold another hearing, at which "[t]he governing body shall consider any objections to the resolution of annexation and the adopted resolution of intent[.]" Thereafter, the governing body "may adopt the resolution of annexation[.]" *Id.*

[¶11.] The next sections, SDCL 9-4-4.5 through SDCL 9-4-4.9, deal with the right to submit the resolution of annexation to a vote for its rejection or approval. And SDCL 9-4-4.10 gives "[a]ny person of the annexed area" a right "to compel performance of any aspect of the resolution of intent or the resolution of annexation[.]" SDCL 9-4-4.11 governs a resolution of intent by a small municipality.

[¶12.] SDCL 9-4-5 — the statute at issue here — is entitled, "Annexation of unplatted territory subject to approval by county commissioners." It states:

> No such resolution describing unplatted territory therein may be adopted until it has been approved by the board of county commissioners of the county wherein such unplatted territory is situate. For the purposes of this section, unplatted territory is any land which has not been platted by a duly recorded plat or any agricultural land as defined in § 10-6-31.

The next several sections, SDCL 9-4-6 through SDCL 9-4-10, relate to a petition for *exclusion* of a territory from a municipality. Then, SDCL 9-4-11 governs the recording of a resolution "[w]henever the limits of any municipality are changed[.]" The remaining statutes, not relevant to this case, deal with the annexation of territory near a municipal airport. *See* SDCL 9-4-12 to -14.

[¶13.] Looking at the structure of chapter 9-4 as a whole and, in particular, the words used by the Legislature in SDCL 9-4-5, it is unclear whether the Legislature intended SDCL 9-4-5 to apply both to voluntary and city-initiated actions to annex unplatted territory. There are two means by which a governing body can annex property by resolution — on its own initiative under SDCL 9-4-4.2 or upon a landowner's petition under SDCL 9-4-1. Yet nowhere in SDCL chapter 9-4 does the Legislature connect the restriction in SDCL 9-4-5. This is problematic because the first phrase of SDCL 9-4-5 — "[s]uch resolution" — suggests that the Legislature had in mind a specific resolution. That the language "such resolution" is ambiguous is further supported by the fact that within SDCL chapter 9-4 there are three types of resolutions discussed. The first is simply a "resolution," which may be adopted by the governing body upon a petition for annexation by a landowner. *See* SDCL 9-4-1. The next is a "resolution of intent," which stems from a city's action to annex property and is adopted after a governing body conducts a study and holds a hearing. *See* SDCL 9-4-4.2, -4.3. The third is a "resolution of annexation," which can be adopted by a governing body after the adoption of a resolution of intent and after a hearing. *See* SDCL 9-4-4.4.

[¶14.] Because SDCL 9-4-5 refers to "[s]uch resolution," and because there are three resolutions discussed in SDCL chapter 9-4, we cannot simply declare the meaning of SDCL 9-4-5 from what the Legislature said. Rather, we must invoke our rules of statutory construction and turn to legislative history to ascertain the intent of the Legislature. *See Slama v. Landmann Jungman Hosp.*, 2002 S.D. 151, ¶ 7, 654 N.W.2d 826, 828 (citation omitted).

[¶15.] Since at least 1887, landowners and municipalities could initiate the annexation of property. 1887 Territorial Code. In 1919, the Legislature provided three methods for municipal annexation: (1) including territory by a petition, which must be "signed by not less than three-fourths of the legal voters and by the owner or owners of not less than three-fourths in value of any territory contiguous to any municipal corporation," (2) including platted ground without a petition, which territory a governing body could include by adopting a resolution, and (3) including unplatted ground without a petition, for which territory the governing body must present a petition to the county commissioners. 1919 S.D. Rev. Code §§ 6559-6561. There was no condition within the 1877 Territorial Code or the 1919 Revised Code requiring a governing body to obtain approval from the board of county commissioners where such unplatted territory was located. This same statutory framework was carried over into the 1939 South Dakota Code and continued until 1955. *See* S.D. Code §§ 45.2905-.2907 (1939).

[¶16.] In 1955, the Legislature repealed Section 45.2907, related to the annexation of unplatted territory without a petition, and amended Section 45.2906. 1955 S.D. Sess. Laws ch. 215, §§ 1, 3. These changes were significant. The Legislature amended Section 45.2906 to cover both platted and unplatted territories, so that "[w]henever there shall be territory either *platted or unplatted* adjoining any municipality, the governing body may by resolution so extend the boundary of such municipality as to include such territory, in the following manner: . . . ." 1955 S.D. Sess. Laws ch. 215, § 1 (emphasis added). But, as it related to *unplatted* territory, the Legislature added the restriction that "[n]o such resolution

describing *unplatted* territory therein shall be adopted until the same has been approved by the board of county commissioners of the county wherein such unplatted territory is situate." *See id.* (emphasis added). From the language of Section 45.2906 it is clear that by using "such resolution," the Legislature was referring to the resolutions of Section 45.2906, which were only city-initiated. This restrictive language in Section 45.2906 is the same as that found in SDCL 9-4-5 today.

[¶17.]   In 1967, the Legislature amended the code again. The provisions on the annexation of property were placed in SDCL Title 9, and the sections from the 1939 Code were broken into:

> SDCL 9-4-1 Annexation of contiguous territory on petition by voters and landowners.
>
> SDCL 9-4-2 Annexation authorized without petition.
>
> SDCL 9-4-3 Resolution of intention to annex without petition.
>
> SDCL 9-4-4 Publication of resolution of intention — Hearing and adoption by governing body.
>
> SDCL 9-4-5 Annexation of unplatted territory subject to approval by counting commissioners.

Notably, SDCL 9-4-2 (city-initiated annexation), and not SDCL 9-4-1 (voluntary annexation), specifically required the governing body to comply with SDCL 9-4-5, further reinforcing the notion that the Legislature intended SDCL 9-4-5 to apply only to city-initiated resolutions for annexation.

[¶18.]   In 1979, the Legislature revised "the process of municipal annexation" and extended "the referral power to residents of the annexed area." 1979 S.D. Sess. Laws ch. 47. This revision repealed SDCL 9-4-2, SDCL 9-4-3, and SDCL 9-4-4, which eliminated the provision that connected SDCL 9-4-5 to a city-initiated

annexation action. 1979 S.D. Sess. Laws ch. 47, §§ 13-15. Yet the Legislature did not repeal SDCL 9-4-5, nor did it enact legislation within chapter 9-4 connecting SDCL 9-4-5 to a city-initiated action for annexation. In 1982, the Legislature amended SDCL 9-4-5 to "define unplatted territory for the purpose of municipal annexation[.]" 1982 S.D. Sess. Laws ch. 71. This amendment, however, did not change the statutory language referring to "[s]uch resolution[.]"

[¶19.]    Save Our Neighborhood contends that language from one of our decisions supports its position. In 2003, in a case involving a voluntary petition for annexation under SDCL 9-4-1, this Court was asked to determine, among other things, whether the value of the property to be annexed was correctly determined and whether the property was contiguous. *Esling,* 2003 S.D. 59, 663 N.W.2d 671. Although SDCL 9-4-5 was not specifically at issue, we cited this statute and wrote, "Municipal annexation is subject to approval by the county commissioners if the territory is unplatted, as it was in this case." *Id.* ¶ 26. Relying on this sentence, Save Our Neighborhood argues that this Court *interpreted* SDCL 9-4-5 and *determined* that it applies to a voluntary petition under SDCL 9-4-1. Yet, in *Esling,* when we cited SDCL 9-4-5, we were addressing whether the city had the power to zone territory contrary to a zoning ordinance when that property is annexed. 2003 S.D. 59, ¶ 26, 663 N.W.2d at 680. We did not interpret or construe SDCL 9-4-5 in resolving that issue, and therefore, this sentence provides no guidance in this case.

[¶20.]    From a review of the plain language of the statute, the legislative history, and prior precedent, we conclude that the Legislature did not intend SDCL 9-4-5 to apply to a resolution adopted for a voluntary petition for annexation under

SDCL 9-4-1. The original statutory language was part of and connected to a city-initiated action for annexation. *See* S.D. Code § 45.2906 (1967). And although the Legislature did not clearly and unambiguously connect SDCL 9-4-5 to SDCL 9-4-4.2 when it overhauled the laws on municipal annexation, we said long ago that "[i]n case of doubt and uncertainty as to the meaning of a provision of a compiled or revised statute, its true meaning may properly be ascertained by resort to the act from which the provision was derived, and particularly is this rule applicable where it is not subject to a fair construction without consultation of the original statute." *See Lewis v. Annie Creek Mining Co.*, 74 S.D. 26, 34, 48 N.W.2d 815, 819 (1951). Indeed, "[r]evised or consolidated statutes will be construed as bearing the same meaning as the original statutes or sections unless the language of the revision or consolidation plainly requires a change of construction to conform to the manifest intent of the Legislature." *Id.* at 35, 48 N.W.2d at 820; *see also New Era Mining Co. v. Dakota Placers, Inc.*, 1999 S.D. 153, ¶ 10, 603 N.W.2d 202, 205. Here, the original meaning of the language in SDCL 9-4-5 was that a city must obtain approval from the board of county commissioners when a city initiates an annexation action, and nothing in the revised statutory framework suggests a change of construction. The circuit court did not err when it denied Save Our Neighborhood's writs of certiorari and prohibition.

[¶21.]     Affirmed.

[¶22.]     GILBERTSON, Chief Justice, and ZINTER and SEVERSON, Justices, and JOHNSON, Circuit Court Judge, concur.

[¶23.]    JOHNSON, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.