Doug ROGERS and LeEtta Rogers,
Plaintiffs and Appellants,

v.

ALLIED MUTUAL INSURANCE
COMPANY, Defendant and
Appellee.

No. 18594.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1994.

Decided Aug. 24, 1994.

Ronald A. Wager, Bantz, Gosch, Cremer & Peterson, Aberdeen, for plaintiffs and appellants.

Charles B. Kornmann, Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee.

WUEST, Justice.

Doug and LeEtta Rogers appeal the trial court's grant of summary judgment in favor of Allied Mutual Insurance Company (Allied). We affirm.

### FACTS

Doug and LeEtta Rogers are husband and wife. (Hereinafter in this opinion they shall be referred to collectively as "Rogers," and individually as "Doug" and "LeEtta.") The Rogers were formerly residents of Aberdeen, South Dakota although they now reside in the state of Washington. On November 7, 1985, LeEtta was driving the Rogers' vehicle, which was insured by Allied. Another driver, Ed Koth (Koth) was driving his vehicle which was insured by Aetna Casualty Insurance Company (Aetna), when he failed to obey a stop light and struck the Rogers' vehicle. LeEtta suffered serious injuries as a result of the accident and Doug suffered a loss of consortium with his wife LeEtta.

Rogers commenced an action against Koth in October 1988, seeking to recover damages caused by the accident. Koth's insurance

policy with Aetna was a single limit policy with limits of $50,000. LeEtta's injuries alone exceeded said limits. The action against Koth was settled by Aetna paying the policy limits. With Allied's consent, Rogers entered into a release with Koth. The consent to the release reserved any and all claims and defenses that Allied and the Rogers may have under the Allied policy.

The Rogers looked to the underinsured motorist (UIM) coverage portion of their policy with Allied to recover additional damages. The UIM portion of the Allied policy was subject to split limits of $50,000 per person and $100,000 per accident. Pertinent language of the UIM portion of the policy provides:

### UNDERINSURED MOTORISTS COVERAGE

We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of bodily injury:

1. Sustained by a **covered person;** and
2. Caused by an accident.

. . . . .

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

"**Covered person**" as used in this endorsement means:

1. Your [sic] or any **family member.**

. . . . .

### LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one accident. Subject to this limit for "each person", the limit of liability shown in the Schedule or in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Covered persons;**
2. Claims made;

. . . . .

(Emphasis shown as in original.)

Allied took the position that it owed the Rogers nothing under the UIM portion of their policy. This conclusion was reached by Allied's reasoning that since $50,000 was already paid by Aetna, that amount would be deducted from the $50,000 UIM "per person" limit on the Allied policy, leaving a difference of zero. *See Farmland Ins. Co. v. Heitmann,* 498 N.W.2d 620, 625 (S.D.1993) (holding that under SDCL 58–11–9.5, UIM coverage "is limited to the difference between the underinsured motorist coverage limits on the vehicle of the insured less the amount paid by the liability insurer of the underinsured motorist."). Conversely, the Rogers' position was that the $100,000 "per accident" limit should apply because Doug's loss of consortium claim was an injury separate from LeEtta's. Thus, Rogers expected that Allied should pay $50,000, the difference between their UIM coverage limits ($100,000) and the $50,000 already paid by Aetna, Koth's liability insurer.

Rogers brought a declaratory judgment action against Allied to resolve this question. After entering into a stipulation of facts, both Rogers and Allied moved for summary judgment. After a hearing, the trial court rendered its decision denying Rogers' motion and granting summary judgment to Allied. Specifically, the court determined "that there is no ambiguity in the insurance policy in question and that no underinsured motorist coverage is available from [Allied] to [Rogers]." From the judgment and order of the court, Rogers appeal.

### STANDARD OF REVIEW

In reviewing a grant of summary judgment under SDCL 15–6–56(c) we must determine whether the moving party has demonstrated there is no genuine issue of material fact and he is entitled to judgment as a matter of law. *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). *See*

*Farmland,* 498 N.W.2d at 622; *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 498 (S.D.1990). As there appears to be no genuine issue of material fact in this case, our task on this appeal is to determine whether the law was correctly applied. *Farmland,* 498 N.W.2d at 622; *Taggart,* 462 N.W.2d at 498.

■　Construction of a written contract is also a question of law. *Dirks v. Sioux Valley Empire Elec. Ass'n,* 450 N.W.2d 426, 427–28 (S.D.1990). Further, "[w]hether contract language is ambiguous is a question of law." *American State Bank v. Adkins,* 458 N.W.2d 807, 809 (S.D.1990) (citing *Enchanted World Doll Museum v. Buskohl,* 398 N.W.2d 149, 151 (S.D.1986)). We review questions of law de novo. *Rusch v. Kauker,* 479 N.W.2d 496, 499 (S.D.1991) (citing *Permann v. Dep't of Labor, Unemp. Ins. Div.,* 411 N.W.2d 113, 117 (S.D.1987)).

## INTERPRETATION OF INSURANCE CONTRACTS

■　" '[W]here the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted.' " *Kremer v. American Family Mut. Ins. Co.,* 501 N.W.2d 765, 767–68 (S.D.1993) (quoting *Prokop v. North Star Mut. Ins. Co.,* 457 N.W.2d 862, 864 (S.D.1990)). This rule of liberal construction in favor of the insured and strictly against the insurer "applies *only* where the language of the insurance contract is ambiguous and susceptible of more than one interpretation." *Klatt v. Continental Ins. Co.,* 409 N.W.2d 366, 369 (S.D.1987) (citing *Strong v. State Farm Mut. Ins. Co.,* 76 S.D. 367, 369, 78 N.W.2d 828, 829 (1956)). We have also noted:

'We are mindful of the rule of construction that where the provisions of an insurance contract are not clear and are fairly susceptible of different interpretation that one most favorable to the insured should be adopted. This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.'

*City of Fort Pierre v. United Fire and Casualty Co.,* 463 N.W.2d 845, 848 (S.D.1990)

(quoting *Black Hills Kennel Club v. Firemens' Fund Indemnity Co.,* 77 S.D. 503, 506–07, 94 N.W.2d 90, 92 (1959)).

## ANALYSIS AND DECISION

■　As this is a case of first impression in South Dakota, it is instructive to consider the reasoning and conclusions of courts in other jurisdictions that have faced the question presented herein. Representative of courts taking the position urged by the Rogers is the reasoning of the Missouri Supreme Court in *Cano v. Travelers Ins. Co.,* 656 S.W.2d 266, 271 (Mo. banc 1983). In *Cano,* the husband was injured in an accident with an uninsured motorist. 656 S.W.2d at 268. His damages were set at $50,000 and his wife's damages for loss of consortium were $10,000. *Id.* The couple's insurance policy contained a clause limiting liability for uninsured motorist coverage, "to a total of $10,000 for 'all damages because of bodily injury sustained by any one person as a result of any one accident.' " *Id.* at 271. The insurance company argued that this language capped the total recovery at $10,000. *Id.* In a unanimous opinion, seven justices of the Missouri Supreme Court disagreed with the insurer. *Id.* Analyzing the policy language—which is essentially identical to the language in the case at bar—the court stated:

There is a problem of interpretation in the policy language just quoted. If the participle "sustained" is read as referring to "damages" then [wife's] damages, as well as [husband's], would be covered, inasmuch as a person entitled to damages on account of bodily injury to another is explicitly named as an insured in the policy. If "sustained" is to be read as modifying "bodily injuries," then the conclusion of the Court of Appeals would be correct. It is not unusual to speak both of "damages sustained" and of "injuries sustained." One circumstance is that the participle is closer to "injuries" than it is to "damages." This might indicate that it modifies the nearest noun. But this circumstance is not a very strong one, especially when one considers that [wife] is clearly within the third "insured" classification of the policy

and that a limiting construction might dilute or eliminate any effective coverage for persons in her position. A construction which may render a portion of the policy illusory should not be indulged in.

*Id.* Thus, the court concluded that "there is an ambiguity which should be resolved against the insurer." *Id.* (citation omitted). *Cano* was more recently applied by the Eighth Circuit Court of Appeals in *American Standard Ins. Co. of Wis. v. Forsythe,* 915 F.2d 1212, 1217 (8th Cir.1990) (stating that the policy language under interpretation was identical to that in *Cano;* thus, such policy language is ambiguous and loss of consortium claim must be allowed under the policy).

The opposite conclusion—as urged by Allied—was reached when the Iowa Supreme Court interpreted language identical to that contained in the Rogers' Allied insurance policy in *Lepic v. Iowa Mut. Ins. Co.,* 402 N.W.2d 758 (Iowa 1987). The insurer argued that the phrase, "for all damages for bodily injury sustained by any one person in any one accident" was not ambiguous, thus limiting liability under the policy to "one person" coverage and not allowing recovery of a loss of consortium claim. 402 N.W.2d at 761–63. The court stated:

> Numerous courts have ruled on phrases similar to the one before us and uniformly they have rejected the [insured's] argument that the words of the policy should be reordered to create an ambiguity. In fact, the courts have specifically held that the policy language should be given effect as ·written, not moving the phrase "sustained by any one person" to modify language earlier in the limitation provision, such as "all damages."

*Id.* at 762 (citations omitted). The court also agreed with the insurer "that the word 'all' is inclusive; thus, any damage that can be suffered by any individual as a result of bodily injury to one person is covered by the phrase 'all damages.'" *Id.* at 763.

In reviewing the policy language, the Iowa court in *Lepic* applied a doctrine of statutory construction providing that "qualifying words and phrases ordinarily refer only to the immediately preceding antecedent.... Under this rule the qualifying words 'sustained by

any one person' would modify the immediately preceding phrase 'for bodily injury.'" *Id.* at 762.

Likewise, this court "long ago" adopted the rule known as · the "Doctrine of the Last Antecedent" which states: "[i]t is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Kaberna v. School Bd. of Lead–Deadwood Sch. Dist. 40–1,* 438 N.W.2d 542, 543 (S.D.1989) (citing *Lewis v. Annie Creek Mining Co.,* 74 S.D. 26, 33, 48 N.W.2d 815, 819 (1951)). *See State v. Ventling,* 452 N.W.2d 123, 126 (S.D.1990) (applying doctrine of the last antecedent; and describing *Kaberna* as utilizing the doctrine on a statute applying "two possible modifying clauses to a single, subsequent term"). In the policy language presented here, the two possible modifying clauses are "for all damages" and "for bodily injury." The single subsequent term is "sustained." Thus, application of the Doctrine of the Last Antecedent requires that the term "sustained" is modified by the last antecedent clause, "for bodily injury." The conclusion reached by the application of the rule comports with the conclusion reached by the Iowa court in *Lepic;* that is, the Rogers are limited to the $50,000 per person maximum recovery with respect to all claims arising from the injury of LeEtta. Because Rogers have already received the $50,000 policy limits from Aetna, they will receive no underinsured benefits from the Allied policy.

The order of the circuit court granting summary judgment to Allied is affirmed.

HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., concurs specially.

MILLER, C.J., concurs in result.

SABERS, Justice (concurring specially).

I agree with the result because Husband's damages for loss of consortium are derivative in nature. Husband's damages result from the negligent injury to his spouse and are dependent thereon. *Selchert v. Lien,* 371

N.W.2d 791 (S.D.1985). If Husband were to prevail in his argument, the per person coverage for damages as a result of bodily injury to one spouse would be effectively doubled. This would be contrary to South Dakota law as expressed in *Clark v. Regent Ins. Co.*, 270 N.W.2d 26, 29 (S.D.1978). *Kremer v. American Family Mut. Ins. Co.*, 501 N.W.2d 765, 768 (S.D.1993).

> "The purpose of the uninsured motorist statutes is to provide the *same insurance protection* to the insured party who is injured by an *uninsured or unknown* motorist *that would have been available to him had he been injured as a result of the negligence of a motorist* covered by the minimum amount of liability insurance." (Emphasis supplied.)

*Clark*, 270 N.W.2d at 29.

Therefore, I agree with the result of this case because it provides the *same insurance protection* that *would have been available* as a result of the negligence of a motorist covered by the amount of liability insurance. *Clark*, 270 N.W.2d at 29.

MILLER, Justice (concurring in result).

I agree with the result but decline to rest my agreement solely on the doctrine of the last antecedent. Citing this doctrine as the only basis for the decision is an unnecessarily narrow ground on which to limit recovery by Rogers. Harsh and otherwise unjustified results in subsequent cases could be mandated by sole reliance on the doctrine in this case. There is South Dakota case law on both the derivative nature of consortium claims and the policy reasons for uninsured motorist statutes which provides much clearer and defensible grounds for the decision to limit recovery from Rogers' own insurer.

Under South Dakota law, a cause of action for loss of spousal consortium is derivative in nature. *Selchert v. Lien*, 371 N.W.2d 791, 794 (S.D.1985); *Wilson v. Hasvold*, 86 S.D. 286, 293, 194 N.W.2d 251, 255 (1972). "As such, its validity depends on the validity of the main claim." *Budahl v. Gordon & David Assoc.*, 287 N.W.2d 489, 493 (S.D.1980) (citing *Bitsos v. Red Owl Stores, Inc.*, 350 F.Supp. 850 (D.S.D.1972)). Here, the tort-feasor's insurer paid LeEtta $50,000 in dam-

ages as compensation for the injuries she sustained in the accident. When LeEtta received compensation equal to the full extent of her underinsured motorist coverage, she was no longer entitled to any additional damages from Allied based on this coverage. Given the derivative nature of consortium claims, Doug may not demand separate recovery from Allied for damages resulting from LeEtta's bodily injuries, when LeEtta herself has extinguished eligibility for further recovery.

The plain language of the policy supports this conclusion. The "each person" limit of $50,000 contained in the underinsured motorist portion of the policy applies to "all damages *for bodily injury* sustained by any one person in any one accident." As a maximum cap on recovery, the higher "each accident" limit of $100,000 applies to "all damages *for bodily injury* resulting from any one accident." Both limits require damages "for bodily injury." Neither party contends that Doug's loss of consortium constitutes bodily injury to himself. Consequently, in order to qualify as damages "for bodily injury," as required by the policy, the loss of consortium damages which Doug seeks can only be for bodily injury sustained by one person— LeEtta. Since the $50,000 per person limit for bodily injury to LeEtta has already been satisfied by contributions from the tort-feasor's insurer, the Rogers have received compensation equal to the full limits of their policy and are not entitled to any additional sums from Allied.

Cases from other jurisdictions, considering identical or similar policy language, have also confined consortium claimants to the same "per person" policy limits applied to their injured family members. *Sicoli v. State Farm Mut. Auto. Ins. Co.*, 464 N.W.2d 300, 303 (Minn.Ct.App.1990) (husband's loss of consortium was not bodily injury, so where wife's damages exhausted the limit in underinsured motorist policy "for all damages due to bodily injury to one person," further recovery by husband was barred under the terms of the policy); *Redcross v. Aetna Casualty and Surety Co.*, 146 A.D.2d 125, 539 N.Y.S.2d 146, 146–47 (1989) ("per person" liability limit "for all damages for bodily inju-

ry sustained by any one person in any one accident" included derivative claims for care and loss of services arising out of the bodily injury of that one person); *Federal Kemper Insurance Co. v. Karlet,* 189 W.Va. 79, 428 S.E.2d 60, 64 (1993) (where policy provided coverage for "all damages arising out of bodily injury sustained by one person as a result of one accident," children claiming loss of parental consortium were not to be treated as separate injured persons subject to separate "per person" and "per occurrence" liability limits); *see also Weekley v. State Farm Mut. Auto. Ins. Co.,* 537 So.2d 477, 480 (Ala. 1989); *Izzo v. Colonial Penn Ins. Co.,* 524 A.2d 641, 645 (Conn.1987); *Mackoul v. Fidelity & Cas. Co. of New York,* 402 So.2d 1259, 1260 (Fla.Dist.Ct.App.1981), *appeal denied,* 412 So.2d 467 (Fla.1982); *Creamer v. State Farm Mut. Auto. Ins. Co.,* 161 Ill.App.3d 223, 112 Ill.Dec. 748, 749–750, 514 N.E.2d 214, 215–16 (1987); *Gillchrest v. Brown,* 532 A.2d 692, 693 (Maine 1987); *Santos v. Lumbermen's Mut. Casualty Co.,* 408 Mass. 70, 556 N.E.2d 983 (1990); *Bain v. Gleason,* 223 Mont. 442, 726 P.2d 1153, 1158–59 (1986); *Allstate Ins. Co. v. Pogorilich,* 605 A.2d 1318, 1320–21 (R.I.1992); *McGovern v. Williams,* 741 S.W.2d 373, 376 (Tex.1987); *Miller v. Public Employees Mut. Ins. Co.,* 58 Wash. App. 870, 795 P.2d 703, 706 (1990), *appeal denied,* 115 Wash.2d 1012, 797 P.2d 513 (1990); *Richie v. American Family Mut. Ins. Co.,* 140 Wis.2d 51, 409 N.W.2d 146, 148 (Ct.App.1987), *appeal denied,* 140 Wis.2d 873, 416 N.W.2d 66 (1987).

Finally, limiting Doug's recovery to the amount set forth in the "per person" limitation is consistent with the rationale behind underinsured motorist coverage. "The purpose of the uninsured motorist statutes is to provide the same insurance protection to the insured party who is injured by an *uninsured or unknown* motorist that would have been available to him had he been injured as a result of the negligence of a motorist covered by the minimum amount of liability insurance." *Clark v. Regent Ins. Co.,* 270 N.W.2d 26, 29 (S.D.1978) (emphasis in original). Essentially then, uninsured motorist coverage compensates the insured party for the difference between the required amount of liability insurance and the amount, if any,

that can be recovered from the underinsured tort-feasor. In this case, the tort-feasor was not an underinsured motorist, because he maintained liability insurance equal to the underinsured limits of the Rogers' policy. If this Court permitted Doug to recover separately from Allied for his loss of consortium damages, the Rogers would receive double recovery—once from the tort-feasor and once from their own insurer. Double recovery exceeds the clear objective of uninsured motorist statutes, and I will not condone it.

In light of South Dakota case law concerning the derivative nature of consortium claims and the underlying purpose of underinsured motorist insurance, as well as the weight of persuasive authority from other jurisdictions, I concur in the result.