2000 SD 152

Zachory **FRIESZ, A Minor Child, through his Guardian Ad Litem, Alba FRIESZ, and Estate of Chad Clair Schatz, through the Administratrix, Alba Friesz, Plaintiffs and Appellees,**

v.

**FARM & CITY INSURANCE COMPANY, Defendant and Appellant.**

No. 21396.

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 2000.

Decided Dec. 6, 2000.

Ralph Kemnitz, Philip, SD, Erik R. Johnson of Solberg, Stewart, Miller, Johnson & Tjon, Fargo, ND, Attorneys for appellees.

Thomas H. Harmon of Tieszen Law Office, Pierre, SD, Attorney for appellant.

AMUNDSON, Justice.

[¶ 1.] Farm & City Insurance Company appeals the trial court's holding that it is financially obligated to indemnify Zachory Friesz up to fifty thousand dollars according to the underinsured motorist provision within the insurance policy. We reverse.

## FACTS

[¶ 2.] On August 14, 1993 Chad Schatz, the father of Zachory Friesz, was killed in a car accident. The car in which Schatz was a passenger was allegedly traveling at a rate in excess of ninety miles per hour. In 1996, Schatz' estate sued the driver of the car, Cody Warne, and secured a settlement in the amount of twenty five thousand dollars.

[¶ 3.] Through Zachory Friesz, this case was brought to enforce the claim of the estate of Schatz against his own insurance company, Farm & City, for underinsured motorist coverage. According to the Schatz policy, the limit the insurance company was obligated to pay is twenty-five thousand dollars "per person" and fifty thousand dollars "per accident." The trial court determined that although there was only one person attempting to collect under the policy, the insurance policy allowed a recovery up to the fifty thousand dollar limit. The trial court reasoned that since the settlement of twenty-five thousand dollars would negate the underinsured policy limit if it were deemed to be twenty-five thousand dollars, the fifty thousand dollar limit would apply in order for Schatz' estate to recover. The court surmised that if the higher amount was not used, the underinsured motorist provision would be in effect "illusory."

[¶ 4.] The trial court also determined that the endorsement attached to the policy controls whether Friesz is entitled to recovery. The endorsement expressly delineated a "per accident" limit only, and not a "per person" limit. The endorsement was blank as to the amount of the "per accident" limit. Based on the public policy against "illusory" insurance contracts and the language of the endorsement, the trial court held in favor of Friesz. Farm & City appeal raising the following issues:

1) Whether the trial court erred in placing a fifty thousand dollar limit on the underinsured motorist provision considering the language of the entire insurance policy.

2) Whether the twenty-five thousand dollar limit under the policy's underinsured motorist provision amounted to "illusory" insurance coverage.

## STANDARD OF REVIEW

[¶ 5.] When interpreting insurance contracts, we have uniformly held them reviewable as a matter of law under the de novo standard. *De Smet Ins. Co. v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; *Economic Aero Club, Inc. v. Avemco Ins. Co.,* 540 N.W.2d 644, 645 (S.D.1995); *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994). This includes determining whether an insurance contract is ambiguous. *Rogers v. Allied Mut. Ins. Co.,* 520 N.W.2d 614, 616 (S.D. 1994). We review a trial court's findings of fact under a clearly erroneous standard. *Jasper v. Smith,* 540 N.W.2d 399, 401 (S.D. 1995).

## DECISION

### ISSUE I

[¶ 6.] **Whether the trial court erred in placing a fifty thousand dollar limit on the underinsured motorist provision considering the language of the entire insurance policy.**

[¶ 7.] We have stated that "a contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *City of Watertown v. Dakota, Minnesota & E. R.R. Co.,* 1996 SD 82, ¶ 13, 551 N.W.2d 571, 574 (citing *Baker v. Wilburn,* 456 N.W.2d 304, 306 (S.D.1990)). As we stated in *Olson v. United States Fid. & Guar. Co.,* 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200, specific rules of construction apply to the interpretation of an insurance policy.

[¶ 8.] Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly

against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured. *Id.* (citing *Rogers v. Allied Mutual Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994)). "[A]n ambiguity is not of itself created simply because the parties differ as to the interpretation of the contract." *Johnson v. Johnson*, 291 N.W.2d 776, 778–79 (S.D.1980) (citations omitted). "An insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *St. Paul Fire & Marine Ins. Co. v. Schilling*, 520 N.W.2d 884, 887 (S.D. 1994) (citations omitted).

■ [¶ 9.] Here, Friesz argues that an ambiguity exists because the description page, which outlines the $^{25}\!/_{50}$ thousand dollar limits "per person" and "per accident" conflicts with the endorsement page, which lists only a "per accident" limitation with a blank space where the dollar amount should be written. When the insurance contract is read as a whole, and in light of statutory mandates, it is clear that additional recovery is not warranted under the underinsured motorist provision. The description page details in clear and unambiguous language that the policy limits coverage to twenty-five thousand dollars per person and fifty thousand dollars per accident. In fact, on the face of the description page, the premium paid by Schatz is broken down for each coverage provision. For each premium paid, Schatz paid $73.95 for bodily injury protection, the same for property damage protection, $3.40 for uninsured motorist coverage, and $2.55 for underinsured motorist coverage. One is only entitled to benefit to the level of the premium paid. Because Schatz paid $2.55 for underinsured motorist coverage, he is only entitled to the amount of recovery attributable to that risk taken by the insurer, that being the $^{25}\!/_{50}$ limits stated on the description page.

■ [¶ 10.] The endorsement page and the description page read together leads one to conclude that twenty-five thousand dollars is the limit Friesz could collect under the underinsured motorist provision. A contract is to be examined and read in its entirety with all provisions being read together to construe its meaning. *See Kimball Invest. Land Ltd. v. Chmela*, 2000 SD 6, 604 N.W.2d 289. Thus, this Court is persuaded that twenty-five thousand dollars is the limit this contract provides under these circumstances.

■ [¶ 11.] When the insurance contract is read in light of SDCL 58–11–9.5 it is clear that Friesz cannot receive more than the twenty-five thousand dollars already recovered under the settlement. According to SDCL 58–11–9.5, "[c]overage shall be limited to the underinsured motorist coverage limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against." Likewise, we have also often stated that the underinsured's recovery is "confined to 'the difference between the UIM policy limits less the amount paid by the liability insurer of the tortfeasor.' " *Farmland Ins. Co. v. Heitmann*, 498 N.W.2d 620, 625 (S.D.1993); *Great West Casualty Co. v. Hovaldt*, 1999 SD 150, ¶ 11, 603 N.W.2d 198, 200. When the twenty-five thousand dollar settlement is subtracted from the amount recoverable under the underinsured motorist provision of twenty-five thousand dollars, the result is zero. Thus, no recovery under the policy is allowed by statute. *See also Nickerson v. American States Ins.*, 2000 SD 121, 616 N.W.2d 468.

### ISSUE II

[¶ 12.] **Whether the twenty-five thousand dollar limit under the policy's underinsured motorist provision amounted to "illusory" insurance coverage.**

■ [¶ 13.] It has been established that it is against public policy to validate illuso-

ry insurance contracts. See *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614 (S.D. 1994). The trial court concluded that this contract was "illusory" because there happened to be no recovery for the insured when applying SDCL 58–11–9.5. The trial court added that only in a "far-fetched" scenario would an insured be able to recover under this policy. We disagree.

[¶ 14.] The State of South Dakota has enacted a statutory scheme for minimum insurance coverage. SDCL 58–11–9.4, in pertinent part, provides:

> No motor vehicle liability policy of insurance may be issued or delivered in this state with respect to any motor vehicle registered or principally garaged in this state, except for snowmobiles, *unless underinsured motorist coverage is provided therein at a face amount equal to the bodily injury limits of the policy.* [Emphasis supplied].

A simple observation here is that our Legislature has spoken. If a different statutory scheme is preferred, it seems clear that this is a matter for the Legislature alone to accomplish. The policy in question has a $^{25}/_{00}$ thousand dollar limit for underinsured motorist coverage and a $^{25}/_{00}$ thousand dollar limit for bodily injury. The Schatz policy conforms to the statutory requirement listed in SDCL 58–11–9.4. The compliance with a statutory mandate such as SDCL 58–11–9.4 cannot constitute an "illusory" contract for insurance. "When an insurance company offers coverage mandated by law, in words which parallel the language of the statute, it is logically impossible to charge the insurance company with offering an illusory contract, when the contract offered is mandated." *Fagundes v. Am. Int'l Adjust. Co.*, 2 Cal. App.4th 1310, 3 Cal.Rptr.2d 763, 767

(1992). We decline the invitation to rewrite statutes that form our public policy to the benefit of one individual.*

[¶ 15.] Moreover, the insurance contract is not "illusory" as there are numerous scenarios under which Friesz might possibly recover. For example, if the settlement was less than the twenty-five thousand dollars actually received, then the insured would be able to collect the amount of the difference between the policy limit and the settlement agreement. In other words, if Friesz had obtained a ten thousand dollar settlement, he would then be entitled to fifteen thousand dollars under the underinsured motorist provision. Other factual scenarios exist where recovery under the underinsured motorist provision is possible. The fact that, at minimum levels, the underinsured portion will rarely be used does nothing to render the coverage illusory. This is particularly true, as noted, where the offered coverage is expressly mandated by statute.

[¶ 16.] Therefore, we reverse and remand.

[¶ 17.] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

---

* Friesz relies upon the decision of the Supreme Court of Illinois in *Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985). The *Glazewski* case permitted an action for fraud on the basis that assuming underinsurance coverage had no value. We decline to follow the Illinois court in this matter. Besides the statutory differences between our statutes and those of Illinois, we are not persuaded by the *Glazewski* court's assumption that under no circumstances could one recover under the underinsured motorist provision. We disagree with such a broad assertion as we find numerous circumstances where one could recover under this underinsured motorist provision.