#24470, #24471-a-DG

**2007 SD 123**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KADEN HOGLUND and
MONTE HOGLUND,                                    Plaintiffs and Appellants,

   v.

DAKOTA FIRE INSURANCE COMPANY,        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
MARSHALL COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JACK R. VON WALD
Judge

\* \* \* \*

CHET GROSECLOSE
Sioux Falls, South Dakota

and

KERRY CAMERON of
Cameron Law Office
Sisseton, South Dakota                    Attorneys for plaintiffs
                                          and appellants.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert & Garry
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellee.

\* \* \* \*

                                          CONSIDERED ON BRIEFS
                                          ON OCTOBER 1, 2007

                                          OPINION FILED **12/05/07**

GILBERTSON, Chief Justice

[¶1.] A motions hearing was held in the South Dakota Fifth Judicial Circuit on August 21, 2006, in regard to a declaratory judgment action filed by Monte and Kaden Hoglund, father and son (collectively Hoglunds), seeking a ruling that Monte could recover expenses from Dakota Fire Insurance Company (Dakota Fire) in connection with injuries to Kaden resulting from an automobile collision caused by its insured, Matthew West (West). Prior to the hearing, Dakota Fire filed a motion for summary judgment. On February 12, 2007, the circuit court entered its judgment and order granting Dakota Fire's motion. We affirm.

## FACTS AND PROCEDURE

[¶2.] There is no dispute about the facts underlying this case. On January 24, 2004, at about 12:00 p.m., Kaden was severely injured in an automobile collision while driving to his home at Langford, South Dakota. The collision occurred at a rural intersection when West failed to stop for a stop sign.[1] Kaden suffered permanent injuries as a result of the collision.

[¶3.] At the time, Kaden was 17-years-old. He did not reach his 18th birthday until July 8, 2004. During the intervening period Monte incurred $38,627.21 in hospitalization, medical and surgical care expenses on Kaden's behalf.[2] In addition to this sum, Monte claimed that he was entitled to $1,630.00

---

1. Dakota Fire has acknowledged that West's negligence is the sole proximate cause of the collision.

2. A parent is required by law to provide support and care for his minor child. Matter of Certification of Questions of Law from U.S. Court of Appeals (*Knowles v. United States*), 1996 SD 10, ¶41, 544 NW2d 183, 192 (citation

(continued . . .)

-1-

attributable to his loss of after-tax income during a one-month period that he took off from work to care for Kaden after the accident. Kaden claimed damages, resulting from the collision with West in excess of $100,000.00 for pain and suffering, loss of enjoyment of life, permanent injuries and future medical expenses.

[¶4.]     The auto insurance policy, issued to West by Dakota Fire, capped the insured's liability coverage at $100,000.00 per person and $300,000.00 per accident. Dakota Fire offered to settle with Hoglunds for $100,000.00 in exchange for West's release. On December 2, 2005, Hoglunds commenced an action against Dakota Fire seeking a declaratory judgment that Dakota Fire was also liable under the policy for a second "per person" limit to cover Monte's expenses and services provided on Kaden's behalf.[3]

[¶5.]     On December 20, 2005, Dakota Fire answered the complaint and counterclaimed seeking a determination that it was liable for no more than $100,000.00 under a single "per person" limit. On July 13, 2006 Dakota Fire filed a motion for summary judgment. The matter was heard by the circuit court on August 21, 2006. The court, in its memorandum opinions of October 12, 2006 and December 28, 2006, concluded that while Dakota Fire was not obligated for a second "per person" limit under the policy, Monte was entitled to $1,630.00 for the value of

---

(. . . continued)
      omitted); SDCL 25-7-6.1. Since Kaden's mother died in 2003, Monte was
      solely obligated for the payment of Kaden's expenses incurred prior to his
      18th birthday.

3.    Sometime after the complaint was served, Dakota Fire paid Hoglunds
      $100,000.00 under an agreement whereby both parties agreed to preserve all
      rights and defenses.

services provided to Kaden. On February 12, 2007, the circuit court entered findings of fact and conclusions of law in this regard and entered judgment and order granting Dakota Fire's motion for summary judgment in all other respects.

[¶6.]     In addition to Hoglunds' appeal, Dakota Fire raises issues by notice of review. We combine Hoglunds' first appeal issue and Dakota Fire's first review issue as follows:

> 1.     Whether Monte's claims were separate from Kaden's.

> The following issues were raised by Hoglunds on appeal:

> 2.     Whether the terms of the insurance policy that Dakota Fire issued to West were ambiguous such that they should have been construed in favor of Hoglunds, thereby entitling Monte to recovery for damages under a second "per person" liability limit.

> 3.     Whether Monte and Kaden both sustained "bodily injury" within the meaning of the policy.

> Dakota Fire raises an additional issue by notice of review:

> 4.     Whether there was sufficient evidence to sustain the circuit court's award of $1,630.00 for the value of Monte's services rendered to Kaden.

## STANDARD OF REVIEW

[¶7.]     "In reviewing a grant of summary judgment under SDCL 15-6-56(c) we must determine whether the moving party has demonstrated there is no genuine issue of material fact and he is entitled to judgment as a matter of law." Rogers v. Allied Mut. Ins. Co., 520 NW2d 614, 615 (SD 1994) (citations omitted). "Once we determine that the material facts are undisputed, our review is limited to whether the law was correctly applied." Pauley v. Simonson, 2006 SD 73, ¶7, 720 NW2d

665, 667 (citations omitted). "We review questions of law de novo with no discretion given to the circuit court." *Id*. (citations omitted).

[¶8.] "When interpreting insurance contracts, we have uniformly held them reviewable as a matter of law under the de novo standard." Friesz ex rel. Friesz v. Farm & City Ins. Co., 2000 SD 152, ¶5, 619 NW2d 677, 679 (citing DeSmet Ins. Co. v. Gibson*, 1996 SD 102, ¶5, 552 NW2d 98, 99; Economic Aero Club, Inc. v. Avemco Ins. Co.*, 540 NW2d 644, 645 (SD 1995); State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 NW2d 273, 275 (SD 1994)). "This includes determining whether an insurance contract is ambiguous." *Id*. (citing *Rogers*, 520 NW2d at 616).

## ANALYSIS AND DECISION

[¶9.] **1. Whether Monte's claims were separate from Kaden's.**

[¶10.] While the circuit court found for Dakota Fire in rejecting Monte's claim to coverage under a second "per person" limit, it nonetheless concluded that he had a separate cause of action for medical expenses incurred prior to Kaden's 18th birthday, and for the value of service that he provided to Kaden.[4] We agree.

[¶11.] This Court has reviewed appeals dealing with facts similar to those of this case. In *Knowles v. United States*, 1996 SD 10, 544 NW2d 183, we discussed several cases that considered the nature of parent claims arising out of tortious injury to children. In *Knowles* we reviewed certified questions submitted by the United States Court of Appeals for the Eighth Circuit, pertaining to claims filed

---

4.    Monte also claimed damages attributable to the loss of Kaden's service prior to his 18th birthday. However, the circuit court rejected this claim for insufficient evidence. Hoglunds do not challenge this decision on appeal.

against the United States under the Federal Tort Claims Act. *Id.* ¶4, 544 NW2d at 185.

[¶12.]    The claims in *Knowles*, were brought by the parents of an infant who suffered severe brain damage following hospitalization and routine treatment at the Ellsworth Air Force Base Hospital near Rapid City, South Dakota. *Id.* ¶¶5, 6, 544 NW2d at 185. The parents brought claims on their own behalf and for the infant for medical malpractice, emotional distress, and loss of consortium. *Id.* ¶6, 544 NW2d at 185. Pertinent to the instant case was the Court's analysis of the third and fourth certified questions, respectively; whether South Dakota law recognized parental claims for emotional distress or loss of consortium that arose from injuries to a minor child; and, whether South Dakota's statutory limitation for malpractice damages applied separately to the claims and to the plaintiffs. *Id.* ¶6, 544 NW2d at 185-86.

[¶13.]    We rejected the existence of parental claims for emotional distress and loss of consortium.[5] *Id.* ¶43, 544 NW2d at 193. However, we reiterated our prior holding "that a parent may bring a cause of action to recover consequential damages incurred because of negligent injury to a child." *Id.* ¶40, 544 NW2d at 192 (citing Barger for Wares v. Cox, 372 NW2d 161, 164 (SD 1985)). The basis for a parent's

---

5.    Noting that we had recognized a claim for spousal loss of consortium and that it was grounded in the common-law, *Knowles*, 1996 SD 10, ¶42, 544 NW2d at 192 (citing *Hoekstra v. Helgeland*, 78 SD 82, 98 NW2d 669, 670-79 (1959), we consulted with the treatise of professors Prosser and Keeton, *The Law of Torts* § 125, 934 (5thEd 1984), in concluding that no similar basis existed for parental claims for loss of consortium or emotional distress. *Id.* ¶43, 544 NW2d at 193.

cause of action against a tortfeasor, for recovery of medical expenses resulting from negligent injury to a child, arises from the common-law rule that obliges the parent to provide medical attention for the minor child.[6] *Id.* ¶42, 544 NW2d at 193 (citing Prosser and Keeton, *The Law of Torts* § 125, 934 (5thEd 1984)). *See also* SDCL 25-7-6.1 (codifying the parent's obligation to a minor child).

[¶14.] We also analyzed whether the surviving medical malpractice claims of the parents were separate and distinct or derivative actions. *Id.* ¶¶45-49, 544 NW2d at 193-94. In arriving at the answer to this question we relied heavily on our prior holding in *Barger*.

[¶15.] *Barger* was another case that involved a claim brought by a parent on behalf of a tortuously injured minor child and a parental claim to recover medical expenses incurred on the behalf of the child. 372 NW2d at 164. In *Barger*, the child's claim was barred by our former guest statute.[7] The issue this Court addressed was whether the parent's claim was similarly barred. The Court's task in addressing the issue was to decide whether the parent's claim was derivative of the child's or separate and distinct.

[¶16.] The Court observed that the parent's claim was not a true derivative action in so much as that designation belongs to those causes of action which accrue

---

6.  Although not at issue in the instant case, the parent's right to recover for the lost services of a tortiously injured minor child is similarly grounded in the common-law rule that entitles a parent to such services. *Id.* ¶42, 544 NW2d at 193 (citing Prosser, § 125, 934).

7.  Our former guest statute was codified under SDCL 32-34-1 (*repealed by* 1978 SD Sess. Laws ch 240, § 2).

to fatally injured persons and survive their deaths, which are then maintainable by the representatives of the estates. *Id.* at 165 (quoting Irlbeck v. Pomeroy, 210 NW2d 831 (Iowa 1973)). Such claims are subject to any defense that could have been raised against the decedent. *Id.* The Court went on to conclude that while claims such as the one in *Barger*, brought by the parent to recover medical expense incurred on behalf of the child, are not truly derivative in that the parent who incurred them was the injured party, such claims nevertheless arise out of and are consequential to the injury sustained by the child. *Id.* We also observed:

> An act or omission of a person which causes a loss of the services of a minor child to a parent, *or necessitates expenditures to cure an injury done to the child*, entitles the parent to recover damages when it appears that the act or omission is one which the law holds to be a legal wrong. . . . [I]n such a case as this, where the basis of the claimed wrongful conduct is the failure of the defendant to take certain steps to prevent the child from suffering injury, *the parent cannot recover unless that failure constituted a legal wrong to the child.*

*Id.* (citing Shiels v. Audette, 174 A 323, 325 (Conn 1934)) (citation omitted) (emphasis added). In coming to the determination that the parent's claim in *Barger* was barred by our former guest statute, the Court implied in the holding that the parent's claim, while separate and distinct from the child's, was, nevertheless, derivative *in nature.* *Id.* (analogizing with *Titze v. Miller*, 337 NW2d 176 (SD 1983) (holding that a husband's cause of action for loss of consortium failed when the injured spouse was unable to recover damages for her own personal injuries, because although separate and distinct from the injured spouse's claim for personal injuries, the loss of consortium claim was in any case derivative *in nature*)).

[¶17.]     This was precisely the basis upon which we answered question four in

*Knowles*.  We said:

> Due to the differing nature of the parents' claim in
> comparison to the child's, we find that parents' claim is
> a distinct 'action' as applied to [our statutory damages
> cap.][8]  However, the actions are linked in regard to liability
> issues and the parents cannot recover unless the child
> also has a good cause of action. . . .  Because, [our statutory
> damages cap] is a limitation on damages only, not liability,
> we hold the parents' 'action' and child's 'action' are separate
> and distinct for purposes of the damages cap.

*Knowles*, 1996 SD 10, ¶50, 544 NW2d at 194.

[¶18.]     While the facts of the instant case are different from *Knowles*, the

basis upon which we decide this issue is identical.  Monte sought to recover medical

expenses incurred prior to Kaden's 18th birthday.  Kaden claimed damages for pain

and suffering, loss of enjoyment of life, permanent injuries and future medical

expenses.  However, the two plaintiffs' claims are linked by liability stemming from

West's negligent act of running a stop sign and colliding with Kaden.  Therefore,

Monte's ability to state a cause of action depended on Kaden's ability to show that

his damages were the proximate cause of West's negligence.  Thus, while Monte's

and Kaden's claims are separate and distinct, they are derivative in nature.

[¶19.]     **2.     Whether the terms of the insurance policy that
                    Dakota Fire issued to West were ambiguous such
                    that they should have been construed in favor
                    of Hoglunds, thereby entitling Monte to recovery
                    for damages under a second "per person" liability
                    limit.**

---

8.     The constitutionality of our statutory, malpractice damages cap, codified
       under SDCL 21-3-11, was at issue in *Knowles* and abrogated by our answer
       to certified question 1.  ¶72, 544 NW2d at 199.

[¶20.] Hoglunds argue that the "LIMIT OF LIABILITY" paragraph under the "PART A – LIABILTY COVERAGE" section of the auto insurance contract issued to West by Dakota Fire is ambiguous and therefore should be construed to provide a second "per person" liability limit to cover Monte's consequential damages. The paragraph provides as follows:

LIMIT OF LIABILITY

. . .
The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declaration for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

[¶21.] Hoglunds advocate that we employ the rule of statutory and grammatical construction known as "The Doctrine of the Last Antecedent" to interpret the insurance contract in their favor. Under the rule, the modifying clause is confined to the last antecedent, *unless* there is something in the dominant purpose of the provision that requires a different interpretation. *Rogers*, 520 NW2d at 617 (quoting Kaberna v. School Bd. of Lead-Deadwood Sch. Dist. 40-1, 438 NW2d 542, 543 (SD 1989)) (citing Lewis v. Annie Creek Mining Co., 74 SD 26, 33, 48 NW2d 815, 819 (1951)) (citing State v. Ventling, 452 NW2d 123, 126 (SD 1990)).

[¶22.] Hoglunds contend that employing the general rule to the language of the paragraph, the modifying clause "sustained by any one person," applies to the last antecedent, "bodily injury," such that "per person" liability limits are available to provide coverage only for "bodily injury" as defined in the policy. Application of

the general rule would exclude coverage for Monte's claims because they are not included in the definition. However, Hoglunds assert that the dominant purpose of the provision is to limit liability *for damages*, thereby taking precedence over the general rule. Hoglunds thus contend that the modifying clause applies to the term "all damages," thereby including coverage for Monte's claims under a second "per person" limit.

[¶23.]    Addressing this issue, we rely on our well-established principles for interpreting an insurance contract when ambiguities are alleged:

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation. . . . This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

Olson v. U.S. Fidelity and Guar. Co., 1996 SD 66, ¶6, 549 NW2d 199, 200 (citing *Rogers*, 520 NW2d at 616). "Ambiguity in an insurance policy is determined by reviewing '*the policy as a whole and plain meaning and effect of its words.*'" Chord v. Reynolds, 1999 SD 1, ¶15, 587 NW2d 729, 732 (quoting American Family Mut. Ins. Co. v. Elliot, 523 NW2d 100, 102 (SD 1994)).

[¶24.]    In addition to the aforementioned paragraph governing the limit of liability, *supra* ¶4, Dakota Fire's policy declarations page reflects that the liability coverage for "BODILY INJURY" is $100,000.00 per person and $300,000.00 for each accident. The "INSURING AGREEMENT" under "PART A – LIABILITY COVERAGE" provides as follows: "We will pay damages *for* 'bodily injury' . . . for

which an 'insured' becomes legally responsible because of an auto accident." The "DEFINITIONS" section of the policy defines "bodily injury" as: "bodily harm, sickness or disease, including death that results."

[¶25.] We juxtapose these provisions with the paragraph limiting liability and reject Hoglunds' claim of a dominant purpose that would result in a strained and unusual meaning. Considering the whole policy and the plain meaning and effect of its words, we find no ambiguity in the policy. The policy provides $100,000.00 of "per person" "bodily injury" liability coverage.[9] The part of the policy under which Dakota Fire agrees to pay claims states that it will "pay **for** bodily injury. . . ." "Bodily injury" as defined in the policy does not include the type of claims for which Monte seeks recovery. Since we conclude that the dominant purpose of the limiting paragraph is to limit Dakota Fire's liability exposure for "bodily injury," damages,[10] we find no basis upon which to reverse the circuit court on this issue.

---

9. Although the text of this insurance policy controls the resolution of this issue, the issue itself has arisen in other jurisdictions:

> . . . where a minor is injured by an insured, the minor's parents' claim for recovery of loss of the minor's service and the minor's medical expenses under the terms of an automobile liability policy do not make the parent a separate "person" for purposes of recovering more than the policy limits of liability for "bodily injury" to "each person."

Couch on Insurance § 170:8. *Couch* goes on to cite 43 cases from 13 jurisdictions which adhere to this holding.

10. While not an issue in this case, the limiting paragraph also functions to limit Dakota Fire's liability exposure for property damage.

[¶26.] **3. Whether Monte and Kaden both sustained "bodily injury" within the meaning of the policy.**

[¶27.] Hoglunds argue that the terms "bodily injury" and "personal injury" are used interchangeably or that "personal injury" is a broad term that includes "bodily injury." Hoglunds then cite *Knowles* for the proposition that "personal injury" includes a "personal right." 1996 SD 10, ¶49, 544 NW2d 183, 194 (reiterating that a parent's cause of action for consequential damages resulting from the negligent injury to a child is a personal right). Hoglunds assert that since in *Knowles* we concluded that the parents' cause of action for their medical malpractice claims were separate and distinct from the child's claims, having recognized that they were grounded in a personal right, Monte thereby is entitled to coverage under a second "per person" liability limit on the basis of personal right.

[¶28.] Hoglunds cite a number of cases and statutes to illustrate that the terms "bodily injury" and "personal injury" have been used interchangeably. We do not disagree that these terms have frequently been used in this fashion. Where we do disagree is in Hoglunds' interpretation of our analysis in *Knowles*. While we reiterated a prior holding that the term *personal injury* includes *injuries to personal rights*, the statement was made in a statutory context. *Id.* ¶49, 544 NW2d at 194 (citing *Titze*, 337 NW2d at 177). The question in *Knowles* pertaining to the analysis that Hoglunds cite was whether the statutory limitation on damages applied to the consequential claims of the parents as well as the minor child. *Id.* ¶44, 544 NW2d at 193; *see also supra* ¶12. The issue here is whether Monte can recover damages under the insurance policy for his claims consequential to Kaden's injury. While our analysis of the preceding two issues indicates that Monte has a cause of action

separate and distinct from Kaden's, his ability to recover under the policy is precluded by the language therein.

[¶29.]    **4.    Whether there was sufficient evidence to sustain the circuit court's award of $1,630.00 for the value of Monte's services rendered to Kaden.**

[¶30.]    A parent is required by law to provide support and care for his minor child. *Knowles*, 1996 SD 10, ¶41, 544 at 192 (citations omitted); SDCL 25-7-6.1. Whether Monte contemplated the legal obligation when he took a month off from work to care for his severely injured son is not a matter of record. What is a matter of record is that doing so cost him $1,630.00 in after-tax income. The circuit court concluded an award of $1,630.00 was appropriate for the value of Monte's services. Our review of the record indicates Dakota Fire failed to preserve this issue for our appellate review. *See* Anderson v. Johnson, 441 NW2d 675, 677 (SD 1989) (reiterating that issues not properly preserved below cannot be reviewed by this Court on appeal) (citations omitted).

[¶31.]    Affirmed.

[¶32.]    SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.