#27903-r-GAS
**2017 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

ARGUS LEADER MEDIA,                     Plaintiff and Appellant,

  v.

LORIE HOGSTAD, in her official
capacity as Sioux Falls City Clerk,
TRACY TURBAK, in his official
capacity as Sioux Falls Finance
Officer, and CITY OF SIOUX FALLS,       Defendants and Appellees.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JOHN PEKAS
Judge

* * * *

JON E. ARNESON
Sioux Falls, South Dakota            Attorney for plaintiff and
                                     appellant.


JAMES E. MOORE
JORDAN J. FEIST of
Woods, Fuller, Shultz &
  Smith PC
Sioux Falls, South Dakota            Attorneys for defendants and
                                     appellees.

* * * *

ARGUED JANUARY 11, 2017
OPINION FILED **09/20/17**

#27903

SEVERSON, Justice

[¶1.]        The City of Sioux Falls entered into a confidential settlement agreement with several contractors that built the Denny Sanford Premier Center in Sioux Falls, S.D.  The settlement agreement's confidentiality clause provided that, with the exception of the settlement amount, the details of the contract would remain confidential.  A reporter for the Argus Leader sought a copy of the agreement; the City denied the request.  The Argus Leader asked the City to reconsider its position, but the City refused to provide a copy of the agreement.  After the denial, the Argus Leader commenced this action, alleging that the agreement is a public record and seeking an order compelling the City to provide a copy.  The circuit court determined that the settlement agreement was not open to public inspection under SDCL chapter 1-27.  Argus Leader appeals.  We reverse.

**Background**

[¶2.]        In 2014, the City of Sioux Falls raised questions regarding the aesthetic appearance of the exterior siding of the newly constructed Denny Sanford Premier Center.  The City reached a settlement agreement with the general contractor and four subcontractors of the project.  The agreement addressed both the final amounts due and the City's dissatisfaction with the work.  One of the subcontractors later disputed the terms of the agreement.  The City retained outside counsel, who drafted a complaint to enforce the settlement agreement.  However, after further negotiation, the parties to the original agreement reached another settlement agreement.  The City's outside counsel sent the drafted

complaint with an admission of service to one of the subcontractors, but it did not commence a lawsuit prior to settlement.

[¶3.] In September 2015, the City announced through its website that it had reached a global settlement of the dispute with the contractors of the Premier Center. In October, a reporter for the Argus Leader contacted the city attorney and requested a copy of the settlement between the City and the contractors involved in construction of the Premier Center. The city attorney denied the request, citing SDCL 1-27-1.5(20) and the agreement's confidentiality provision as grounds for the denial. The reporter sent another letter asking for the City to reconsider the denial. Again, the City denied the request. On December 1, 2015, pursuant to SDCL 1-27-38, the Argus Leader commenced a civil action contending that the agreement is a public record and asking that the court order the City to produce a copy of the agreement.

[¶4.] Both the Argus Leader and the City moved for summary judgment. The circuit court denied the Argus Leader's motion and granted summary judgment in favor of the City. The court found that pursuant to SDCL 1-27-1.5(20), the contract is not open to public inspection. On appeal, the Argus Leader contends the court erred when it determined that the contract is not an open record. Furthermore, the Argus Leader contends that even if the circuit court correctly interpreted SDCL 1-27-1.5(20), more specific provisions provide that the settlement agreement is an open public record.

## Standard of Review

[¶5.] We review the circuit court's grant of summary judgment de novo to determine whether genuine issues of material fact exist and whether the court correctly applied the law. *Heitmann v. Am. Family Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508-09. When there are no material facts in dispute, our review is limited to determining whether the court correctly applied the law. *Id.* at 509.

## Analysis

[¶6.] In 2009, the Legislature enacted the South Dakota Public Records Act, which broadened the presumption of openness in regard to public records. *Mercer v. S.D. Att'y Gen. Off.*, 2015 S.D. 31, ¶ 17, 864 N.W.2d 299, 303; *see also* SDCL chapter 1-27. SDCL 1-27-1 provides:

> Except as otherwise expressly provided by statute, all citizens of this state, and all other persons interested in the examination of the public records, as defined in § 1-27-1.1, are hereby fully empowered and authorized to examine such public record, and make memoranda and abstracts therefrom during the hours the respective offices are open for the ordinary transaction of business and, unless federal copyright law otherwise provides, obtain copies of public records in accordance with this chapter.
>
> Each government entity or elected or appointed government official shall, during normal business hours, make available to the public for inspection and copying in the manner set forth in this chapter all public records held by that entity or official.

SDCL 1-27-1.1 states, in relevant part:

> Unless any other statute, ordinance, or rule expressly provides that particular information or records may not be made public, public records include all records and documents, regardless of physical form, of or belonging to this state, any county, municipality, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing.

Other than SDCL 1-27-1.5(20), the City does not contend that "any other statute, ordinance, or rule expressly provides" that the contract "may not be made public." SDCL 1-27-1.5 states, in relevant part,

> The following records are not subject to §§ 1-27-1, 1-27-1.1, and 1-27-1.3: . . .
>
> > (20) Any document declared closed or confidential by court order, contract, or stipulation of the parties to any civil or criminal action or proceeding[.]

[¶7.]     The dispute over SDCL 1-27-1.5(20) arises from an ambiguous trailing modifier.  The parties dispute whether the phrase "of the parties to any civil or criminal action or proceeding" modifies "contract" or only "stipulation[.]"  The City maintains that the circuit court correctly determined that "The Doctrine of the Last Antecedent" controls the matter; the phrase only modifies "stipulation."  "Under the rule [of the last antecedent], the modifying clause is confined to the last antecedent, *unless* there is something in the [subject matter or] dominant purpose of the provision that requires a different interpretation."  *Hoglund v. Dakota Fire Ins. Co.*, 2007 S.D. 123, ¶ 21, 742 N.W.2d 853, 859 (citing *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614, 617 (S.D. 1994)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 146 (2012).  Thus, the City argues, the contract falls within "any document [that has been] declared closed or confidential by . . . contract," because it declares itself confidential.  According to the Argus Leader, the phrase "of the parties to any civil or criminal action or proceeding" modifies "contract" as well.  The Argus Leader contends that using the rule of the last antecedent would unreasonably expand the provision by allowing the government to contract around the entirety of the Public Records Act and that the

Public Records Act's primary purpose requires an interpretation different than that given SDCL 1-27-1.5(20) by the circuit court. Therefore, in this case, the Argus Leader maintains that the contract remains an open record because none of the parties to the contract commenced litigation.

[¶8.] Typically, the syntactic canons applicable to this type of phrasing would be the "Last Antecedent Canon"[1] or "Series-Qualifier Canon."[2] *See* Scalia & Garner, *supra* ¶ 7, at 144-151. Those canons would generally call for the phrase "of the parties" to modify either the word "stipulation" alone or to modify each of the words: "court order"; "contract"; *and* "stipulation." However, Scalia and Garner recognize that "[p]erhaps more than most of the other canons, [the series-qualifier canon] is highly sensitive to context. Often the sense of the matter prevails." *Id.* at 150. Clearly, "of the parties to any civil or criminal action or proceeding" cannot modify "court order." The City asserts that the "Legislature could have written the statute such that the phrase 'of the parties to any civil or criminal action or proceeding' would modify the word 'contract.' Instead the Legislature placed the

---

1. "Strictly speaking, only pronouns have antecedents, and the [Nearest-Reasonable-Referent] [C]anon . . . also applies to adjectives, adverbs, and adverbial or adjectival phrases—and it applies not just to words that precede the modifier, but also to words that follow it." Scalia & Garner, *supra* ¶ 7, at 152. Although we are dealing with a modifier that would seem to fall under this canon, the nearest-reasonable-referent canon does not apply because the statute contains a parallel series of nouns. *See id.* ("When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

2. The "Series-Qualifier Canon" provides that "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier *normally* applies to the entire series." Scalia & Garner, *supra* ¶ 7, at 147 (emphasis added).

modifier at the end of the sentence and isolated the word 'contract' between commas."

[¶9.] Nevertheless, comma placement is not dispositive. Punctuation may be a useful tool to interpret statutes, but is not necessarily determinative. *See* SDCL 2-14-8 ("Punctuation shall not control or affect the construction of any provision when any construction based on such punctuation would not conform to the spirit and purpose of such provision."); *see also* Scalia & Garner, *supra* ¶ 7, at 140-43 (explaining that sometimes the court is "textually justified in ignoring the grammarian's reading" and must "override[] punctuation"). Grammatical rules "can be overcome by other textual indications of meaning. . . . Grammatical usage is one of the means (though not the exclusive means) by which the sense of a statute is conveyed." Scalia & Garner, *supra* ¶ 7, at 140-41. As we have explained, "[s]ince statutes must be construed according to their intent, the intent must be determined from the statute as a whole, as well as enactments relating to the same subject. In construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result." *Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.,* 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885 (quoting *Martinmaas v. Engelmann,* 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611).

[¶10.] Rather than syntactic canons, our interpretation of SDCL 1-27-1.5(20) relies on contextual canons. *See* Scalia & Garner, *supra* ¶ 7, at 167-69 (discussing "whole–text canon"). In this case, the subject matter and dominant purpose of the Public Records Act require a different interpretation than that advanced by the City. *See Hoglund,* 2007 S.D. 123, ¶ 21, 742 N.W.2d at 859. We are guided by the

presumption of openness in SDCL 1-27-1 and the directive in SDCL 1-27-1.3 to

construe certain provisions—including SDCL 1-27-1.5—liberally in favor of open,

public records. SDCL 1-27-1.3 provides in part:

> The provisions of §§ 1-27-1 to 1-27-1.15, inclusive, and 1-27-4
> shall be liberally construed whenever any state, county, or
> political subdivision fiscal records, audit, warrant, voucher,
> invoice, purchase order, requisition, payroll, check, receipt, or
> other record of receipt, cash, or expenditure involving public
> funds is involved in order that the citizens of this state shall
> have the full right to know of and have full access to information
> on the public finances of the government and the public bodies
> and entities created to serve them.

There is no question that in this case we are dealing with a record of an expenditure

involving public funds. Therefore, in accordance with that presumption of openness

and the requirement that we construe the statute liberally in favor of openness, we

must narrowly construe the exception with subdivision (20).[3] In doing so, we grant

the exception, which could have more than one interpretation, a meaning that does

not render the entire statute ineffective. *See* Scalia & Garner, *supra* ¶ 7, at 63-65

(presenting a presumption against ineffectiveness as a fundamental principle of

---

3. The dissent asserts that a presumption of openness does not apply to the exceptions. *Infra* ¶¶ 25-26. The dissent's approach construes the exception in isolation. Instead, we construe the provision narrowly in light of the whole enactment. The relevant statutes were all passed in one legislative enactment in 2009. 2009 S.D. Sess. Laws ch. 10. Such a proposition is hardly "breathtaking" considering the Legislature has explicitly mandated that the exception be construed in such a way. SDCL 1-27-1.3 requires this Court to "liberally construe[]" SDCL 1-27-1.5 "in order that the citizens of this state shall have the full right to know of and have full access to information on the public finances of the government and the public bodies and entities created to serve them." Construing the exception solely in the light of the exception's purpose to exclude ignores the Legislature's direction and creates an exception that swallows the Public Record Act's provisions. Such a construction would result in an absurd reading of an ambiguous statute.

statutory interpretation).  Such a construction leads us to conclude that the modifier applies to "contract" as well as "stipulation."

[¶11.]      The context of subdivision (20) does not indicate the Legislature intended to create a broad exception allowing the government to execute a contract declaring "[a]ny document . . . closed or confidential[.]"  To read SDCL 1-27-1.5(20) in such a manner would be contrary to the presumption of openness.  It would also be contrary to the Legislature's directive that we construe SDCL 1-27-1.5 "in order that the citizens of this state shall have the full right to know of and have full access to information on the public finances of the government and the public bodies and entities created to serve them."  SDCL 1-27-1.3.  Instead, it is clear that the context of subdivision (20) contemplates documents pertaining to the judicial process rather than allowing the government to conceal "any document" that it possesses and does not wish to disclose.

[¶12.]      Therefore, the modifier "of the parties to any civil or criminal action or proceeding" modifies "contract."  Here, the city and contractors were not parties to a civil or criminal proceeding.  *See* SDCL 1-27-1.  Accordingly, the City must make the settlement contract "available to the public for inspection and copying in the manner set forth in . . . chapter [1-27]."  The City notes that it was ready to begin litigation over the matter and that enforcing the provision in this way will lead to an odd result that discourages parties from settling potential lawsuits.  Nevertheless, we confine ourselves to what the Legislature said "rather than what [we] think it should have said[.]"  *Martinmaas*, 2000 S.D. 85, ¶ 49, 612 N.W.2d at 611 (quoting *Moss v. Guttormson*, 1996 S.D. 76, ¶ 10, 551 N.W.2d 14, 17).  Nothing

within the Public Records Act would suggest that the Legislature contemplated anticipated litigation, as opposed to commenced litigation, when it enacted this exception, and thus, this contract remains an open record.

[¶13.] Finally, the Argus Leader also maintains that the provisions of SDCL 9-14-17; 9-14-21; and 9-18-2 are more specific statutes that control this matter. *See* SDCL 1-27-33 ("The provisions of this chapter do not supersede more specific provisions regarding public access or confidentiality elsewhere in state or federal law."). SDCL 9-14-17 provides:

> The municipal finance officer shall keep an office at a place directed by the governing body. The finance officer shall keep the corporate seal, all papers and records of the municipality, and a record of the proceedings of the governing body, whose meetings the finance officer shall attend. The finance officer shall draw and countersign all warrants on the treasury in pursuance of orders or resolutions of the governing body and keep a full and accurate account of all such warrants in books provided for that purpose. The finance officer shall make or cause to be made estimates of the expenses of any work to be done by the municipality and countersign all contracts made on its behalf and certificates of work authorized by any committee of the governing body or by any municipal officer. However, the finance officer may destroy any record which the records destruction board, acting pursuant to § 1-27-19, declares to have no further administrative, legal, fiscal, research, or historical value.

SDCL 9-14-21 states:

> The municipal finance officer shall examine all reports, books, papers, vouchers, and accounts of the treasurer; audit and adjust all claims and demands against the municipality before they are allowed by the governing body; and keep a record of the finance officer's acts and doings. The finance officer shall keep a book in which the finance officer shall enter all contracts. The book shall include an index to the contracts and shall be open to the inspection of all parties interested. The finance officer shall perform such other duties as may be required by ordinance,

resolution, or direction of the governing body. However, the finance officer may destroy any record which the Records Destruction Board, acting pursuant to § 1-27-19, declares to have no further administrative, legal, fiscal, research, or historical value.

Finally, SDCL 9-18-2 states: "Every municipal officer shall keep a record of the official acts and proceedings of his office, and such record shall be open to public inspection during business hours under reasonable restrictions."

[¶14.] The Argus Leader is correct that these statutes deal more specifically with certain aspects of municipalities and their record keeping. The circuit court determined that nothing within SDCL 9-14-17; 9-14-21; or 9-18-2 requires the municipality to provide the contract for inspection. However, we need not address whether the court was correct in its decision on the scope of the statutes. Those three statutes do not conflict with our reading of SDCL 1-27-1.5. Accordingly, we need not address the Argus Leader's final argument.

**Conclusion**

[¶15.] The settlement contract between the City and the contractors of the Denny Sanford Premier Center does not meet the requirements under SDCL 1-27-1.5(20). Therefore, it is a public record open to inspection, and the City must make it available in accordance with SDCL chapter 1-27.

[¶16.] GILBERTSON, Chief Justice, and KERN, Justice, and KONENKAMP, Retired Justice, concur.

[¶17.] KONENKAMP, Retired Justice, sitting for WILBUR, Retired Justice, disqualified.

[¶18.] ZINTER, Justice, dissents.

-10-

ZINTER, Justice (dissenting).

[¶19.]     The Court's interpretation of a statute today requires the removal of a comma and the addition of words to the text. The Court states that it is guided by the purpose of a general act rather than the statutory language we must interpret. Using an act's general purpose to change text is a breathtaking proposition. It should be so because, as this case demonstrates, the Court's interpretation makes other statutory language meaningless; it is based on a "guiding purpose" that is necessarily contrary to the purpose of the language that is being construed; and it eschews well-accepted rules of statutory and grammatical construction. For these reasons, I respectfully dissent.

[¶20.]     In 2009, the Legislature revised South Dakota's public records laws. *See* 2009 S.D. Sess. Laws ch. 10 (the Act). As codified, the general Act first defines government records that are subject to public disclosure. SDCL 1-27-1.1. It then sets forth twenty-seven exceptions. SDCL 1-27-1.5 (providing that the excepted documents are not "subject to" the public disclosure statute and are not "subject to" SDCL 1-27-1.3, the statute requiring liberal construction). The exception at issue in this dispute concerns the following kinds of documents:

> Any document declared closed or confidential by *court order, contract,* or *stipulation of the parties to any civil or criminal action or proceeding* . . . .

SDCL 1-27-1.5(20) (emphasis added).

[¶21.]     The question is whether the exception for contracts is limited to contracts made by parties in civil or criminal litigation. This is a question of

standard English: is the noun "contract" modified by the trailing prepositional phrase "of the parties to any civil or criminal action or proceeding"?

[¶22.]     Subdivision (20) lists three methods by which government documents become closed or confidential, and each method is separated by a comma: "court order, contract, or stipulation." *Id.* The modifying prepositional phrase is attached to only the last noun, "stipulation." *Id.* Under any understanding of standard English, a modifying prepositional phrase at the end of a series of parallel nouns modifies either the last noun in the series (stipulation) or all nouns in the series (court order, contract, and stipulation)—i.e., the grammatical rule of the last antecedent. *See infra* ¶ 28. Thus, if the Court is correct that the prepositional phrase modifies more than the last noun (stipulation), then the phrase must modify all three nouns, including the first (court order). But as the Court correctly observes, such a result would be absurd.[4] Obviously, there can be no "*court order* of *the parties* to any civil or criminal action or proceeding." Only a court may enter a court order. Therefore, under standard English, the modifying prepositional phrase cannot modify "contract."

[¶23.]     Nevertheless, the Argus Leader argues we should just construe the statute to have the prepositional phrase modify two (but not *all three*) of the listed nouns. The Argus Leader not only fails to cite any rule or understanding of English that supports its proposed *ad hoc* modification of a serial list of nouns, it contends

---

4.     When using canons of construction to interpret statutes together, we should do so in a way that does not lead to "an absurd or unreasonable result." *See Hayes v. Rosenbaum Signs & Outdoor Advert., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885.

the second comma in the series should be "ignored or treated as a mistake." The Court agrees to remove the comma between "contract" and "stipulation." The Court does so "guided by" the general Act's "presumption of openness." *Supra* ¶ 10.

[¶24.] The Court must also add additional words to the statute. The only way to grammatically modify the last two of the three nouns is to not only delete the second comma, but also read the words "or by" into the text. Thus, the Court amends the statute's text to read as follows (with its additional words italicized and its deleted punctuation stricken):

> Any document declared closed or confidential by court order, *or by* contract, or stipulation of the parties to any civil or criminal action or proceeding.

This type of judicial "construction" is not permitted. We do not, under the guise of judicial construction, add or delete text. *In re Marvin M. Schwan Charitable Found.*, 2016 S.D. 45, ¶ 23, 880 N.W.2d 88, 94; *State v. Moss*, 2008 S.D. 64, ¶ 15, 754 N.W.2d 626, 631; *see also City of Deadwood v. M.R. Gustafson Family Tr.*, 2010 S.D. 5, ¶ 9, 777 N.W.2d 628, 632.

[¶25.] The Court's construction also renders the word "contract" meaningless. In the context of litigation, a contract and a stipulation are the same thing: agreements of the parties. Because agreements to make documents confidential by *stipulation* are expressly limited to those agreements made by parties in litigation, construing that same limitation into *contractual* agreements adds nothing to the statute. A contractual agreement to confidentiality is a stipulation to confidentiality. Thus, declaring a document closed or confidential by "contract" becomes meaningless and is surplusage under the Court's construction. The Argus

Leader conceded this point in oral argument. We should not "assume that the Legislature intended [any] part of [this] statutory scheme be rendered mere surplusage." *See Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 13, 878 N.W.2d 406, 411.

[¶26.] The Court contends that removing the comma is warranted by SDCL 2-14-18. *Supra* ¶ 9. The Court correctly notes that under SDCL 2-14-8, punctuation "shall not control or affect the construction of any *provision* when any construction based on such punctuation would not conform to the spirit and purpose of *such provision*." (Emphasis added.) But here, the Court's removal of the comma is not based on the spirit and purpose of *such provision*; i.e., the legislative exception in SDCL 1-27-1.5(20). It is based on a presumption of openness that the Court takes from other provisions in the general act. Moreover, the Legislature expressly set aside the general Act's "presumption of openness" when it enacted the exceptions. SDCL 1-27-1 ("*Except as otherwise expressly provided by statute*, . . . all citizens . . . are authorized to examine . . . public records . . . ." (emphasis added)); SDCL 1-27-1.5 ("The following records *are not subject to* §§ 1-27-1, 1-27-1.1, and 1-27-1.3 . . . ." (emphasis added)). By using a purpose that is necessarily contrary to the purpose of the language that is being construed, the Court disregards rather than ascertains legislative intent.

[¶27.] The Court also contends its changes to the text are warranted by the general Act's "whole-text," which includes the "presumption of openness." *Supra* ¶ 10 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167-169 (2012)). In my view, the Court misapplies the "whole-text"

canon authority it cites. The Legislature enacted the exceptions for the purpose of *limiting* the general rule of openness. *See* SDCL 1-27-1.5 ("The following records *are not subject to* §§ 1-27-1, 1-27-1.1, and 1-27-1.3 . . . ." (emphasis added)). Therefore, in the words of the Court's own authority, focusing on the purpose of the general act rather than the limiting exception abuses the whole-text canon. *See* Scalia & Garner, *supra*, at 168. "[L]imitations on a statute's reach are as much a part of the statutory purpose as specifications on what is to be done." *Id.* "It is not a proper use of the [whole-text] canon to say that since the overall purpose of the statute is *x*, any interpretation of the text that limits the achieving of *x* must be disfavored." *Id.* But that is exactly how the Court uses the whole-text canon to construe the exception,[5] a use we have expressly rejected. *In re Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d 350, 352 ("[I]t is inappropriate to select one statute on a topic and disregard another statute which may modify or limit the effective scope of the former statute.").

[¶28.] This case should be resolved using standard English. We should apply the well-accepted rule of the last antecedent: "[I]t is the general rule of statutory *as well as grammatical construction* that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Kaberna v. Sch. Bd. of Lead–Deadwood*

---

5. The Court also attempts to justify its use of the whole-text canon by noting that SDCL 1-27-1.3 requires courts to liberally construe the Act. *See supra* n.3 (citing SDCL 1-27-1.3). But SDCL 1-27-1.3 does not apply. The Legislature specifically provided that the exceptions in SDCL 1-27-1.5 "are not subject to" SDCL 1-27-1.3. Moreover, even if liberal construction were required, liberal *construction* does not justify a court's *removal of punctuation and addition of text*.

*Sch. Dist. 40-1*, 438 N.W.2d 542, 543 (S.D. 1989) (emphasis added).  Here, the express purpose of SDCL 1-27-1.5 is to exclude certain government documents from the general presumption of openness, a purpose that is consistent with the exception.  Therefore, we should hold that the phrase "of the parties to any civil or criminal action or proceeding" modifies only "stipulation," the last antecedent.  It is only by using this usual and ordinary understanding of the English language that we avoid making changes in punctuation and text; avoid creating absurdities; and avoid rendering other text meaningless.

[¶29.]        The Argus Leader argues the exception in SDCL 1-27-1.5(20) is a bad law that was poorly drafted and needs revision.  But under our Constitution, it is not this Court's role to fix poorly drafted statutes—the "power to fix statutes substantively would give the Judicial Branch too much leeway to prefer its views about what makes for 'good' laws over those of the Legislative Branch."  *Jaskolski v. Daniels*, 427 F.3d 456, 462 (7th Cir. 2005).

[¶30.]        "Contract" means "contract."  Because the Legislature authorized government entities to enter into confidential settlement contracts without having to start a lawsuit, we should affirm the circuit court.  The Argus Leader's request to change the punctuation and text of the statute should be made to the Legislature, not the courts.